A95A0433. CROOM v. THE STATE.
(458 SE2d 679)

BEASLEY, Chief Judge.

Following denial of his motion for new trial, Croom appeals his convictions for trafficking in cocaine, OCGA § 16-13-31 (a) (1); possession of less than one ounce of marijuana, OCGA §§ 16-13-30 (j) (1), 16-13-2 (b); possession of a firearm during commission of a felony, OCGA § 16-11-106; and possession of a weapon by a convicted felon, OCGA § 16-11-131. He was tried along with co-defendant Cooper, who was found guilty only of the misdemeanor possession of marijuana.

1. Croom contends that the trial court erred in failing to suppress evidence seized in the warrantless search of his vehicle because it was the result of a pretextual stop. The State's evidence at the suppression hearing and at trial shows otherwise.

On April 10, 1992, Officer Smith of the Alma Police Department was in uniform en route to his evening shift as a patrolman when he came up behind the vehicle in which Croom and Cooper were riding. Smith's attention was drawn to the vehicle because it was "weaving" across the white and yellow lines and at one point left the highway. Passenger Cooper looked upset and continuously turned in his seat to look at the officer. The vehicle pulled into a roadside store and Officer Smith travelled on toward Alma. He stopped at another store four or five miles down the road and saw Croom's vehicle pass as he was leaving. Smith entered the roadway behind the vehicle. Croom and Cooper looked "very upset" to see the officer and continued to stare at him. Their vehicle was "continuously weaving" and "all over the road." Suspicious that Croom and Cooper had been drinking, Smith radioed ahead for officers to meet him at the city limits.

Officers Roberts and Brinson met Smith and he reported to them the driving behavior and Croom's license tag number. The two officers saw Croom's vehicle pass and pulled out behind it. Croom and Cooper exited and entered a convenience store, where Roberts and Brinson observed Croom taking a headache powder. Croom and Cooper got

back in their car and drove across the street to the drive-through window of a fast food restaurant, did not order, and exited back onto the street. Roberts and Brinson followed for several blocks. Croom pulled up to a stop sign, turned on his left turn signal, then right, and then again left; when the light turned green, Croom proceeded to go straight even though his turn signal was still on. The officers stopped Croom for illegal use of turn signal. They also believed he was intoxicated.

Croom exited his vehicle and the officers explained the reasons for the stop. One officer walked up to the driver's side and observed some "rolling papers." Another spotted a marijuana "joint" inside the car. Croom appeared nervous and kept requesting to be allowed to go to the trash can. Croom was asked for consent to search the car and executed a written consent to search form. The officers found inside the car 31.2 grams of cocaine with a purity of 77.3 percent, less than one ounce of marijuana, and a nine millimeter handgun. After Croom was arrested, a pipe for smoking crack cocaine was found in his sock.

The officers' decision to stop Croom's car was expressly based on Croom's erratic driving and odd behavior, which they suspected was due to alcohol consumption, and his observed outright violation of the traffic laws. The erratic driving alone was sufficient to raise the reasonable suspicion that the driver was driving while under the influence of alcohol, which justified an investigatory stop. See *Streicher v. State*, 213 Ga. App. 670, 672 (445 SE2d 815) (1994). Moreover, " '[t]he stop of a vehicle is authorized, and not pretextual, if the officer observed a traffic offense. [Cits.]' [Cit.]" *Jones v. State*, 200 Ga. App. 666 (1) (409 SE2d 251) (1991). The fact that the stop ultimately led to the discovery of drugs does not in retrospect render it pretextual.

2. Croom contends that the trial court erred in failing to strike for favor a potential juror who was the fiance of Officer Brinson.

As Croom acknowledges, the juror was not subject to disqualification for principal cause. Brinson was not the prosecutor in the case, although he was one of the involved officers and a witness. See *Spence v. State*, 238 Ga. 399, 400 (233 SE2d 363) (1977). Even if he had been the prosecutor, the juror was not yet related by marriage to Brinson. "OCGA § 15-12-163 does not disqualify [even] relatives of police officers, [cit.]; nor does it disqualify relatives of State's witnesses, [cits.]." *Jones v. State*, 184 Ga. App. 4, 6 (2) (360 SE2d 599) (1987). "Relationship to a witness is not *per se* a ground for excusing a prospective juror. [Cits.]" *Brantley v. State*, 262 Ga. 786, 788 (2) (d) (427 SE2d 758) (1993). Of course, the trial court must take care not to approach "the fine line when it comes to assuring that the members of the jury are fair and impartial, as guaranteed by Ga. Const. 1983, Art. I, Sec. I, Par. XI. . . ." See the writer's special concurrence in

*Jones*, supra at 8.

Croom urges that the juror was not impartial because she stated she would give more credence to testimony from her fiance and admitted she had prior knowledge of the case through discussions with Brinson. Such characterization of the juror's testimony is misleading because it is incomplete.

Initially, defense counsel asked the juror if she would give added credit or credibility to Brinson's testimony because of her relationship with him. The juror responded affirmatively. Defense counsel moved to strike the juror and the court questioned her: "Would you give more weight to [Brinson's] evidence just because you plan to marry him than you would give to the other witnesses?" The juror responded, "no." Defense counsel explored whether the juror had discussed the case with Brinson. She stated that she had done so at the time Croom was arrested but probably did not remember what was said. She related that she had talked to Brinson the day before about his coming to court for the trial but gave no indication that they discussed the substance of the case. The court asked the juror if she would "be able to lay aside all of that conversation and reach a verdict based solely upon the testimony given during this trial." She responded that she could. The court asked if she would be influenced by what Brinson had told her about the case, and the juror stated, "I would be willing to judge it by what I hear." The court asked the juror if she could "lay aside" what her fiance had said to her. Again the juror responded affirmatively. Once more the court asked if she could disregard any prior knowledge and again the juror stated without reservation that she could.

The Supreme Court has held that "(b)efore a juror can be disqualified for cause, it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence. [Cits.] Further, the decision to strike a juror for cause lies within the sound discretion of the trial court. [Cit.]" *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993).

The refusal to strike the juror did not amount to an abuse of discretion. Ultimately, the juror responded that she would give no more credibility to the testimony of her fiance than to that of the other witnesses. There was no indication that she brought any substantive knowledge or any opinion of the case. Her only discussion with Brinson occurred much earlier, and she had no recollection of its substance. She affirmed repeatedly that she could and would base her decision only on the evidence presented at trial.

3. Lastly, Croom contends that the trial court erred in refusing to allow him to pursue cross-examination of co-defendant Cooper. He

wanted to introduce evidence of an April 1993 drug-related civil action for forfeiture of currency and jewelry allegedly belonging to Cooper and two others plus a copy of the complaint. His argument, made for the first time here, is that the court's action limited presentation of his sole defense, i.e., that the contraband was not his but belonged to Cooper. At trial defense counsel stated the reason for seeking admission of the evidence was to "impeach [Cooper] as to a specific statement," i.e., Cooper's testimony that he did "not carry around large sums of money." Thus, there is nothing to review inasmuch as Croom failed to object below on the specific ground he now raises. *Weaver v. State*, 179 Ga. App. 641, 642 (7) (347 SE2d 295) (1986).

Even considering the ruling in light of the present argument, it was not error to refuse this evidence. " 'Generally, accused may introduce evidence tending to show that another person committed the crime with which he is charged, if a proper foundation is laid, unless the probative value of the evidence is substantially outweighed by actual risk of undue delay, prejudice, or confusion.' " *Bradford v. State*, 204 Ga. App. 568, 569 (420 SE2d 4) (1992). This evidence must be such as is relevant to the accused's trial and limited to facts " 'inconsistent with his own guilt' " and " 'raise a reasonable inference or presumption as to his own innocence.' " Id. It " 'must be such proof as directly connects the other person with the corpus delicti, and tends clearly to point out someone besides accused as the guilty person. Evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible. . . .' " Id.

The copy of the condemnation action was not relevant and admissible for it did not directly connect Cooper with the crimes on trial. Moreover, admissions of a party in a civil matter should not be treated as evidence against the party unless shown to have been authorized by him. See *Chester v. State*, 162 Ga. App. 10, 13 (7) (290 SE2d 117) (1982). The complaint for forfeiture did not constitute an admission by Cooper to drug-related activity. It did not state which, if any, of the money or property was owned by Cooper. Additionally, the eventual order of forfeiture was the result of default for failure to answer. Its admission would have had no effect other than at most to cast a bare suspicion upon Cooper. *Bradford*, supra at 570.

*Judgments affirmed. Pope, P. J., and Ruffin, J., concur.*

DECIDED JUNE 14, 1995.

*Charles E. Bagley, Jr.*, for appellant.
*Richard E. Currie, District Attorney, George E. Barnhill, Assis-*

*tant District Attorney*, for appellee.