**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 22, 2013**

# In the Court of Appeals of Georgia

A12A2082. JONES v. THE STATE.

BRANCH, Judge.

Israel Moses Jones was tried by a Chatham County jury and convicted of armed robbery,[1] burglary,[2] and impersonating a police officer.[3] He now appeals from the denial of his motion for a new trial, asserting that the trial court erred in denying his motions to suppress the eyewitness identifications of him resulting from allegedly impermissibly suggestive photographic lineups and the evidence seized as the result of an illegal search. Jones further contends that the trial court erred by refusing to admit evidence that, he claims, would have supported his sole defense of mistaken

---

[1] OCGA § 16-8-41.

[2] OCGA § 16-7-1.

[3] OCGA § 16-10-23.

identity and in denying his motion to sever his trial from that of his co-defendant and brother, Robert Jones. Finally, Jones claims that there existed a fatal variance between the indictment and the evidence that renders the evidence insufficient to sustain his conviction for armed robbery. We find no error and affirm.

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010). So viewed, the record shows that on the morning of May 31, 2008, a man dressed in a dark jacket and carrying a black briefcase entered a local grocery store known as Chu's Market. The man spoke with the owner of the market, Chu Ping, identified himself as "Detective John," and told Mr. Chu that he needed to speak with the owner in the store's office. Mr. Chu obliged, but once the men were in the office, "Detective John" removed a gun from his briefcase and robbed Mr. Chu, taking all of the money in both the store's safe and Mr. Chu's wallet. After the robber left, Mr. Chu retrieved his own gun and ran outside. There he saw a car parked in front of his store, with the robber standing at its passenger door and a second man standing at the driver's door. Mr. Chu fired his gun towards the car and both men fled on foot. Police

2

later showed Mr. Chu a photographic line up from which he identified Jones as the man who robbed him.

The morning of the robbery, Jannie and Alfred Smith were at their home, which is located a short distance from Chu's Market. Within a few minutes after the robbery, both Mr. and Mrs. Smith saw two men approaching their house by way of an open lot that adjoined their yard. Mrs. Smith testified that she thought the men were police officers, because as they walked towards the house she saw one of them wearing a badge.

The men entered onto the Smiths' property and asked for a ride "away from there" and for the use of a telephone. After the Smiths refused both requests, one of the men forced his way inside their house. The man remained in the house briefly but stepped outside when he heard sirens approaching, and Mr. Smith was able to lock the door behind him. Mrs. Smith later saw this same man kneeling near a small storage shed in her back yard. Approximately three weeks after this incident, police showed Mr. Smith a photographic line-up from which he identified Jones as the man who had forced his way into the Smith residence.

Police officers responding to the Smith home searched the Smiths' backyard as well as the adjoining lot through which the Smiths had seen the men approaching. In

3

the Smiths' backyard, police found a black briefcase[4] near the storage shed and a dark jacket in an area immediately across from the shed; neither of these items belonged to the Smiths. Police also recovered a small black gun from the adjoining lot. At trial, Mr. Chu identified the black briefcase, the dark jacket, and the gun as looking like those that were worn or used by Jones during the robbery.

Additionally, one officer who participated in the search testified that he spotted a black badge holder in the adjoining lot. The officer was unaware, however, that one of the robbery suspects had been posing as a police officer and he therefore attached no significance to the badge holder. Instead, he assumed that the badge holder belonged to and/or had been dropped by one of the other officers at the scene. After learning that it might be related to the robbery, the officer returned to the lot and attempted to locate the badge holder, but he could not find it.

The investigating officers obtained a search warrant for the white Ford Explorer parked in front of the store that Mr. Chu had identified as possibly belonging to the

---

[4] Police also found papers in the briefcase, bearing the names of Carmalitha Meriweather and Kelvin J. Banks. Ms. Meriweather testified at trial and explained that Kelvin Banks was her son and that during 2008 he had lived "on and off" with Jones and his wife at their home in Riverdale, so he could go to school. She further explained that the documents in question would have been in Kelvin's possession while he was living at the Jones's home.

4

robbers. During the execution of that warrant, police discovered a large-screen television that had been stolen the previous day during a burglary at a local rental center. Using surveillance videos from the rental center, police later arrested a third party – i.e., a party that was neither Jones nor his brother – for the burglary. Officers also found a wallet and driver's license belonging to Robert Jones in the Explorer, as well as a pay stub belonging to Shamira Hamilton.

Police interviewed Ms. Hamilton, who told them that she was romantically involved with Robert Jones and that he sometimes stayed at her apartment. Following this interview, police obtained a search warrant for Ms. Hamilton's apartment, which they executed during the early morning hours of June 1, 2008. Upon entering the apartment, police found Robert Jones sitting on the sofa and a set of Ford car keys located a short distance from him. It was later determined that these keys belonged to the Ford Explorer found parked outside of Chu's Market.

Also in Ms. Hamilton's apartment police found Israel Jones's partially torn social security card lying on a hallway floor, a neck chain that a police officer identified as being the kind used with a badge holder, and a gym bag. The gym bag was sitting on the floor in one of the apartment's bedrooms, and it was open. Near the top of the open gym bag was an empty plastic bag with a label on it; the label

5

indicated that the bag had originally held a badge holder. Inside the gym bag, police also found a copy of the spring 2008 issue of Quartermaster magazine[5] addressed to Israel Jones at his home in Riverdale. Based on this evidence, police arrested Jones and he was subsequently charged with the crimes at issue.

1. Prior to trial, Jones moved to suppress the identifications of him made by Mr. Chu and Mr. Smith, arguing that the photographic lineups used by police were impermissibly suggestive. The trial court denied that motion. On appeal Jones contends that this ruling was error. We disagree.

This Court will not set aside a conviction based on a pretrial identification by photograph and a subsequent identification at trial unless the record shows that the "photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." (Citation, punctuation and footnote omitted.) *Pinkins v. State*, 300 Ga. App. 17-18 (684 SE2d 275) (2009). "An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator, or is the equivalent of the authorities telling the witness, 'this is our suspect.'"

---

[5] A police officer testified that this magazine is usually used by members of law enforcement to order supplies related to or necessary for their jobs.

(Citation and punctuation omitted.) *Davis v. State*, 286 Ga. 74, 76 (2) (a) (686 SE2d 249) (2009). Additionally, "[t]he taint which renders an identification procedure impermissibly suggestive must come from the method used in the identification procedure." (Citation and punctuation omitted.) Id.

In his brief, Jones does not contend that there was anything inherently suggestive in either the photographs used in the lineups or in the way in which police presented those photographs. Rather, as best we can tell, he is contending that the identification procedure was impermissibly suggestive because: (i) before being shown the photographic lineup containing six pictures, police showed Mr. Smith a single picture of Israel Jones; and (ii) when Chu was unable to identify either of the perpetrators from the first photo lineup they showed him, police offered him a "second bite at the apple" by showing him a second photographic lineup, from which he identified Jones. We find no merit in either of these contentions, however, as they are based on factual misrepresentations.

The record shows that on the day of the incidents in question, police mistakenly showed Mr. Smith a single picture of Robert Jones that was not part of a photographic lineup. There is no evidence, however, that police ever showed Mr. Smith a picture of Israel Jones by itself. Rather, the record reflects that the only photograph police

7

showed Mr. Smith of Israel Jones was the one contained in the photographic lineup.[6] The record also reflects that while Mr. Chu was shown two separate photographic lineups, he was not given two opportunities to identify Jones, because Jones's picture was not included in the first lineup. The first photographic lineup Chu viewed contained a picture of Robert, but not Israel Jones. And Chu identified one of the men in that first lineup (other than Robert) as someone who may have possibly been the second man involved in the robbery; Chu stated definitively, however, that none of the men in that lineup was the man who robbed him. The second photographic lineup did contain a picture of Jones, and Chu identified that picture as being of the man who robbed his store.

Given that there was nothing inherently suggestive or otherwise improper about the photographic line ups, the trial court did not err in admitting the eyewitness identification of Jones.

---

[6] In his brief, Jones asserts that Mr. Smith testified both at the motion to suppress hearing and at trial "that this [single-photo] show-up [of Israel Jones] took place." Notably, however, he fails to offer any citation to the record that supports this assertion – i.e., showing where such testimony occurred, despite the requirement that he support any claim of error with record citations. See Court of Appeals Rule 25 (a). We have found no such evidence in the record.

2. Jones also argues that the trial court erred in denying his motion to suppress the evidence against him that police obtained during their search of Ms. Hamilton's apartment, because the seizure of his social security card, the magazine addressed to him, and the plastic bag exceeded the scope of the search warrant.[7] Jones, however, lacks standing to challenge the search and seizure at issue.

"Because Fourth Amendment rights are personal, a defendant may move to suppress evidence obtained through an illegal search and seizure only when his own rights were violated." (Citation, punctuation and footnote omitted.) *Smith v. State*, 302 Ga. App. 128, 134 (2) (a) (690 SE2d 449) (2010). As a general rule, therefore, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (Punctuation and footnote omitted.) *State v. Carter*, 305 Ga. App. 814, 816 (1) (701 SE2d 209) (2010). Thus, to challenge a search and seizure, "a defendant must show he had an expectation of privacy in the premises searched" or in the property seized. (Citation, punctuation and

---

[7] Jones also states that the search warrant was facially invalid, but he offers no record citations, legal citations, or reasoned argument to support this assertion. Any claim that the warrant itself was facially invalid, therefore, has been abandoned. See *Owens v. State*, 258 Ga. App. 647, 650 (4) (575 SE2d 14) (2002); Court of Appeals Rule 25 (c) (2).

9

footnote omitted.) *Smith*, 302 Ga. App. at 134 (2) (a). And "[t]he burden is on the one claiming a violation of Fourth Amendment rights to demonstrate that [he has] standing to contest such violation, i.e., that [he has] a legitimate expectation of privacy in the premises searched" or the property seized. (Punctuation and footnote omitted.) *Carter*, 305 Ga. App. at 816 (1). Jones has failed to meet this burden with respect to either Ms. Hamilton's apartment or the gym bag and its contents.

As Jones correctly asserts, overnight guests in a private residence may have a legitimate expectation of privacy in that residence. See *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008). A person who is "merely present with the consent of the householder," however, has no such expectation. (Citation omitted.) Id. In this case, there is some evidence supporting an inference that Jones may have been a casual visitor to Ms. Hamilton's home at some recent time. There is no evidence, however, supporting a conclusion that Jones ever spent the night in that apartment. Notably, there was no evidence that police found clothing, toiletries, or other personal effects belonging to Jones. And while Ms. Hamilton testified that Robert Jones sometimes stayed overnight, she did not mention Israel Jones. Ms. Hamilton further testified that when she left for work early on the morning of the robbery, neither Jones's social security card nor the magazine addressed to him were in her apartment. Additionally,

even though officers executed the search warrant in the early morning hours of June 1, 2008 the day after the robbery, Jones was not present in the apartment at that time. Accordingly, Jones has failed to show that he was anything more than a transient visitor to the apartment and thus cannot demonstrate that he had a reasonable expectation of privacy in the apartment. He is therefore without standing to challenge the search of that residence. See *Carter*, 305 Ga. App. at 816-817 (1).

Jones next argues that even if he lacks standing to challenge the search of the apartment, he does have standing to contest the seizure of the gym bag and its contents. Jones is correct that "[a] visitor has a substantial interest in the privacy of all his possessions, wherever located and personal belongings brought by their owner on a visit to a friend's house retain their constitutional protection until their owner meaningfully abdicates control or responsibility." (Citations and punctuation omitted.) *State v. McCarthy*, 288 Ga. App. 426, 428 (2) (654 SE2d 239) (2007). Here, however, Jones did not testify and claim ownership of the bag, either at the motion to suppress hearing or at the hearing on his motion for a new trial. Nor was there any evidence showing that Jones admitted to the police that he owned the bag; rather, Jones's sole defense was that he was in Atlanta at the time the robbery and related crimes occurred. Without an affirmative assertion of a possessory interest in the gym bag, Jones lacks

11

standing to challenge the seizure of that bag and its contents. See *Green v. State*, 239 Ga. App. 617, 619 (3) (521 SE2d 441) (1999) (defendant lacked standing to challenge seizure of cloth bag or its contents where "he . . . never asserted a possessory or proprietary interest in" the bag) (citations omitted); *Lewis v. State*, 233 Ga. App. 560, 562 (2) (504 SE2d 732) (1998) (a party lacks standing to challenge a police officer's seizure of property where the party fails to assert a "possessory interest . . . in the property seized") (citations omitted). Given Jones's lack of standing to challenge the search and seizure at issue, the trial court did not err in denying his motion to suppress.

3. Prior to trial, the court granted Robert's motion in limine to exclude any mention of the stolen television found during the police search of his car. Jones subsequently objected to this ruling, arguing that it deprived him of his sole defense of mistaken identity. Specifically, Jones argued that the evidence of the burglary and the presence of the television in Robert's car supported the inference that it was the rental center burglar, rather than Jones, who was with Robert on the day of the robbery and who, in fact, committed the crimes at issue. The trial court held a hearing on Jones's request that it reconsider its ruling on Robert Jones's motion in limine, and heard evidence regarding the burglary and Jones's argument about how this evidence

12

was necessary to support his defense of mistaken identity. Following that hearing, the trial court reaffirmed its grant of the motion in limine. Jones challenges this ruling on appeal. We find no error.

As a general rule, a defendant may introduce evidence which tends to show that another person committed the crime with which he is charged. See *Klinect v. State,* 269 Ga. 570, 573 (3) (501 SE2d 810) (1998). Such evidence, however, must be otherwise admissible, and its probative value must not be outweighed by the likelihood that it will cause undue delay, prejudice, or confusion. *Pace v. State*, 271 Ga. 829, 838 (18) (524 SE2d 490) (1999); *Croom v. State*, 217 Ga. App. 596, 598 (3) (458 SE2d 679) (1995). Specifically, this evidence must be "relevant to the accused's trial[,]" show "facts inconsistent with [the accused's] own guilt[,] and raise a reasonable inference or presumption as to his own innocence." (Citation and punctuation omitted.) Id. Such evidence must also "directly connect[ ]" the third party with the crime at issue and point clearly to the third party's guilt. Id. "Evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible." (Citation and punctuation omitted.) Id.

Applying the foregoing legal principles, we find that the evidence at issue was properly excluded. The fact that a third party committed an unrelated burglary in some other part of town more than 24 hours before the commission of the crimes at issue does not raise an inference that Jones is innocent of those crimes. See *Scott v. State*, 281 Ga. 373, 377 (3) (637 SE2d 652) (2006) ("[a] reasonable inference of a defendant's innocence is raised by evidence that renders the desired inference more probable than the inference would be without the evidence") (citation and punctuation omitted). Nor does the fact that the stolen television was found in Robert's car "directly connect" the burglar with the commission of the crimes at issue. Instead, the only inference raised by this evidence is that Robert was in possession of stolen property or that he and Jones were in joint possession of that property. Accordingly, the trial court did not err in refusing to admit this evidence. See *Klinect*, supra, 269 Ga. at 573 (3) (defendant not entitled to introduce evidence that third party, whom he contended committed the murder, had a violent disposition; such evidence did not show that third party had a motive or otherwise directly connect him with the crime); *Redding v. State*, 239 Ga. App. 718, 719 (1) (521 SE2d 840) (1999) (where defendant contended that he had been falsely accused of crimes because he refused to cooperate with police in their investigation of a certain drug dealer, evidence that arresting

14

officer had also previously arrested that drug dealer was properly excluded, as it "would have done nothing but cast a bare suspicion in support of defendant['s] . . . defense") (citation omitted).

4. After the trial court reaffirmed its ruling on the motion in limine concerning the stolen television, Jones moved to sever his trial from Robert's. The trial court denied that motion and Jones challenges this ruling on appeal, arguing that the severance would have allowed him to present the evidence related to the television. For the reasons explained in Division 3, however, the evidence at issue would not have been admissible even if Jones's case had been severed from his brother's. Accordingly, this claim of error is without merit. See *Denny v. State*, 281 Ga. 114, 115-116 (1) (636 SE2d 500) (2006); *Rhodes v. State*, 279 Ga. 587, 589-590 (3) (619 SE2d 659) (2005).

5. The indictment in this case charged Jones with armed robbery "by use of a handgun, the exact description of which is unknown . . . ." At trial, there was testimony that although the gun discovered by police resembled a handgun that shoots bullets, it was, in fact, a pellet gun. Jones contends that this evidence shows a fatal variance between the indictment and the evidence and that the evidence is therefore insufficient to sustain his conviction for armed robbery as charged. We disagree.

15

It is well established that "[n]ot all differences between an indictment and proof constitute fatal variances." (Citation, punctuation and footnote omitted.) *Lawson v. State*, 278 Ga. App. 852, 853 (2) (630 SE2d 131) (2006). Rather, a variance will require reversal of a conviction only where, as a result of the variance, either: (i) the accused was not definitely informed of the charges against him, so that he was unable to prepare and present a defense; or (ii) there exists the possibility that the accused could be prosecuted a second time for the same offense. See *Battles v. State*, 262 Ga. 415, 417 (5) (420 SE2d 303) (1992). "If a variance does not present these dangers, it is not fatal." (Citation, punctuation and footnote omitted.) *Lawson*, 278 Ga. App. at 853 (2).

Here, the indictment charged Jones with armed robbery by use of a handgun and the evidence showed that the gun at issue was a small, black gun resembling a gun that shoots bullets. As the manner in which the weapon would be used would be the same for either gun, and as both can produce similar injuries, no fatal variance exists. See *Lawson*, 278 Ga. App. at 854 (2) (no fatal variance where indictment charged aggravated assault by use of a knife and evidence showed weapon was a box cutter; both items were "bladed weapons capable of producing the same type of 'slashing' injury"). Further, Jones has not argued that he was not sufficiently informed of the

16

charges against him so that he could prepare a defense, or that he believed he could be prosecuted a second time for the armed robbery of Chu's Market. Accordingly, any variance between the indictment and the proof offered at trial was not fatal. See *Jackson v. State*, 158 Ga. App. 702, 702 (3) (282 SE2d 181) (1981) (no fatal variance where "the evidence showed that the robbery was committed with a shotgun, whereas the indictment alleged that it had been committed with a pistol") (citation omitted). See also *Wilson v. State*, 291 Ga. App. 69, 72 (1) (b) (661 SE2d 221) (2008) ("[t]he fact that the evidence revealed that the stolen weapon was a .45 caliber pistol while the indictment described it as a .25 caliber handgun did not create a fatal variance").

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*