**FOURTH DIVISION
DILLARD, P. J.,
RICKMAN and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 30, 2024**

# In the Court of Appeals of Georgia

A23A1728. THE STATE v. YEARWOOD-CABBEL.

DILLARD, Presiding Judge.

The State appeals the trial court's grant of Devdan Yearwood-Cabbel's third amended motion to suppress evidence, as well as the denial of its motion for reconsideration of that ruling. Specifically, the State argues the trial court (1) erred by failing to follow this Court's instruction in a prior appeal to issue an order on remand clarifying the basis for its initial denial of Cabbel's motion to suppress; (2) was not authorized to grant the motion as a discovery sanction for its failure to produce certain evidence; and (3) erred in finding Cabbel had standing to challenge the search as an "invited guest" at the residence searched. For the following reasons, we affirm.[1]

---

[1] Oral argument was held in this case on October 4, 2023, and is archived on the Court's website. *See* Court of Appeals of the State of Georgia, Oral Argument, Case

As an initial matter, both parties provide parts of the procedural history of this case, but neither recites the underlying facts accompanied by record citations. Needless to say, it is not the function of this Court to "cull the record on behalf of a party in search of instances of error."[2] To the contrary, the burden is on the party alleging error to "show it affirmatively in the record."[3] But as discussed *infra*, this case was previously before us, and we issued an unpublished opinion remanding it with direction.[4] And while the State "adopts" its brief from the prior appeal (in which it was the appellee), it also notes that our opinion in *Cabbel I* "contains a more-than-

---

Nos. A23A1728 (Oct. 4, 2023), *available at* https://vimeo.com/871883408?share=copy.

[2] *Fleming v. Advanced Stores Co.*, 301 Ga. App. 734, 735 (688 SE2d 414) (2009) (punctuation omitted); *see Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747 (519 SE2d 925) (1999) ( "It is not the function of appellate judges to engage in the . . . search for support of alleged error without citation to relevant parts of the record." (punctuation omitted)); Ct. App. R. 25 (d) (1) (i) ("Each enumerated error shall be supported in the brief by specific reference to the record or transcript. In the absence of a specific reference, the Court will not search for and may not consider that enumeration." (emphasis supplied)).

[3] *Bennett v. Quick*, 305 Ga. App. 415, 416 (699 SE2d 539) (2010) (punctuation omitted); *Fleming*, 301 Ga. App. at 735.

[4] *See Cabbel v. State* ("*Cabbel I*"), Case Nos. A23A0067, A23A0435 (Ga. App. March 22, 2023). While these cases were consolidated and decided in a single opinion, Case No. A23A0067 is the only one relevant to this appeal.

sufficient recitation of the underlying facts of the case and procedural history so far." As a result, for context, we glean the following facts from our opinion in *Cabbel I*.

The record shows that a detective with the Gwinnett County Police Department applied for a warrant to search James Robertson's residence.[5] And in support of the application, the detective submitted an affidavit detailing his investigation into a series of car break-ins and other crimes.[6] The affidavit also explained why he believed evidence of those offenses would be found in Robertson's house, including a stolen firearm, ammunition, and personal belongings of the victims.[7] In addition to the affidavit, the detective gave sworn oral testimony before a magistrate judge in support of the war]rant application.[8]

Thereafter, the magistrate judge issued a search warrant for Robertson's residence.[9] Unlike the detective's affidavit, the warrant did not contain a description

---

[5] *Cabbel I*, A23A0067, A23A0435, at 2.

[6] *See id.*

[7] *See id.* at 2-3

[8] *See id.* As noted in *Cabbel I*, the detective's testimony was recorded, but the recording was not introduced into evidence at the hearing on Cabbel's motion to suppress evidence.

[9] *See Cabbel I*, A23A0067, A23A0435, at 3.

3

of the specific items to be searched for and seized there.[10] And although the warrant form included a box for a "list of certain property, items, articles, [and] instruments to be searched for and seized," it only contained the following: "The residence of James Robertson (DOB 03.30.2003) located at 4114 Waters End Ln., Snellville, GA 30039. A single family home inside Gwinnett County."[11] Significantly, the warrant did not incorporate the detective's affidavit and application.[12]

During the search, the detective and other police officers encountered Cabbel and other individuals and seized incriminating items, including items allegedly linking Cabbel to an armed robbery under investigation.[13] The detective completed an inventory of the seized items, in which he noted that he "left a copy of the warrant, together with the receipt of the seized person(s), property, items, articles, [and] instruments" with Robertson's uncle.[14]

---

[10] *See id.*

[11] *See id.*

[12] *See id.*

[13] *See id.*

[14] *See id.* at 3-4.

Subsequently, the detective prepared a photographic lineup that included an image of Cabbel, and the armed-robbery victim identified him as one of the perpetrators.[15] Cabbel was then arrested (along with a co-defendant), and charged with armed robbery, aggravated assault, and possession of a firearm during the commission of a felony.[16] After he was arrested, Cabbel spoke to detectives in a recorded interview.[17]

Later on, Cabbel filed a motion to suppress the evidence seized during the search, arguing the search of Robertson's residence was unconstitutional on several grounds—including that the warrant was fatally defective on its face because it "fail[ed] to describe with some degree of specificity . . . the items to be searched for and seized."[18] Cabbel sought suppression of all items seized as "fruits of the search," including the items listed in the detective's inventory.[19] Additionally, Cabbel filed separate amended motions, alleging the robbery victim's identification of him and his

---

[15] *See id.* at 4.

[16] *See id.*

[17] *See id.*

[18] *See id.*

[19] *See id.*

custodial statement to detectives were "fruit of the poisonous tree" of the unconstitutional search and should be excluded at trial.[20]

The trial court held a hearing on the matter, during which the State argued, *inter alia*, that Cabbel lacked standing to challenge the validity of the search warrant because he did not live or stay overnight at Robertson's residence.[21] Cabbel testified that, at the time of the search, he had been staying overnight at Robertson's home for a few days and had a bag of clothes there.[22] But on cross-examination, Cabbel admitted that he lived in Suwanee, Georgia; he had not been staying or living with Robertson; and his mother dropped him off at Robertson's home on the day of the search.[23] Following Cabbel's testimony, the trial court stated, "I'm not a hundred percent sure that the law is particularly clear, but at this point in time, based on what I've heard, ... I'm going to find that [Cabbel] does have standing to challenge the search."[24] The

---

[20] *See id.*

[21] *See id.* at 5.

[22] *See id.*

[23] *See id.*

[24] *See id.*

trial court then asked Cabbel's counsel to prepare an order to that effect, but apparently no such order was ever entered.[25]

As to the merits of the case, the State introduced into evidence the search warrant, the detective's application and affidavit, and the inventory form he filled out at the scene.[26] And during the hearing, the detective conceded that the warrant did not list the property to be searched for and seized from the residence and was not incorporated into his warrant application.[27] The detective confirmed that he left a copy of the search warrant and inventory list with Robertson's uncle, but he could not recall whether he also left a copy of the warrant application and affidavit.[28]

Ultimately, the trial court issued a summary order denying Cabbel's motion to suppress.[29] But in the order, the trial court did not include any findings of fact and did not mention Cabbel's separate motions seeking exclusion of the photographic-lineup

---

[25] *See id.* In *Cabbel I*, we noted that the appellate record did not include a proposed order submitted by the defense or an order entered by the trial court on the specific issue of standing. *See id.* at 5 n.1.

[26] *See Cabbel I*, A23A0067, A23A0435, at 6.

[27] *See id.*

[28] *See id.*

[29] *See id.*

identification and his custodial statements.[30] Cabbel appealed, and in *Cabbel I*, this Court determined it could not ascertain from the record or the trial court's order whether it reconsidered its oral pronouncement that Cabbel had standing to challenge the search.[31] Indeed, the *Cabbel I* Court noted that it could not determine whether the trial court denied Cabbel's motion to suppress for lack of standing or on the merits.[32] Given this uncertainty, we vacated the trial court's order denying Cabbel's motion to suppress and remanded the case with direction that the trial court issue a new order clarifying the specific factual findings and legal conclusions forming the basis for denying Cabbel's motion.[33]

---

[30] *See id.*

[31] *See id.* at 8-9; *see also Mondy v. Magnolia Advanced Materials, Inc.*, 303 Ga. 764, 772 (4) (b) (815 SE2d 70) (2018) ("[U]ntil an oral pronouncement is memorialized, the trial judge has broad discretion to amend, alter, or completely change his decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment.").

[32] *See Cabbel I*, A23A0067, A23A0435, at 9 n.6.

[33] *See id.* at 9.

Upon remand, Cabbel amended his suppression motion three times, and ultimately, the trial court granted his third amended motion in a detailed order.[34] The trial court first found that Cabbel had standing to challenge the validity of the search because he was a "regular overnight guest" at Robertson's home, and he had stayed there two or three nights prior to the 9:00 a.m. execution of the warrant. As to the merits of the case, the trial court found that the search warrant was improper on its face because it did not describe with some degree of specificity the places to be searched and items to be searched and seized.

Following the trial court's ruling, the State filed a motion for reconsideration. Specifically, the State contended, *inter alia*, that the trial court failed to follow the *Cabbel I* Court's order to clarify its prior ruling, claiming that our prior opinion did not "contemplate that [the trial court] would adopt a new position in the order on remand." According to the State, the "extreme sanction of evidentiary suppression should not be applied before [the] case goes to a jury." Nevertheless, the trial court declined to reconsider its ruling that suppression of evidence was warranted. The trial court acknowledged this Court's instruction to clarify its ruling (which it did), but

---

[34] Following remand, the trial court held another hearing on Cabbel's motion to suppress evidence, but no additional evidence was presented.

found it had discretion to consider Cabbel's motion anew and grant it. This appeal by the State follows.[35]

In reviewing the trial court's ruling on a motion to suppress, an appellate court generally must "(1) accept a trial court's findings unless they are clearly erroneous, (2) construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and (3) limit its consideration of the disputed facts to those expressly found by the trial court."[36] But this Court reviews *de novo* the trial court's "application of law to the undisputed facts."[37] Bearing these guiding principles in mind, we turn to the State's claims of error.

---

[35] *See* OCGA 5-7-1 (a) (4) (providing that the State may appeal "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized or excluding the results of any test for alcohol or drugs in the case of motions made and ruled upon prior to the impaneling of a jury or the defendant being put in jeopardy, whichever occurs first . . . .").

[36] *State v. Jacobs*, 342 Ga. App. 476, 477 (804 SE2d 132) (2017) (punctuation omitted); *accord Hughes v. State*, 296 Ga. 744, 746 (1) (770 SE2d 636) (2015).

[37] *Jacobs*, 342 Ga. App. at 477 (punctuation omitted); *see Hughes*, 296 Ga. at 750 (2) ("Although we owe substantial deference to the way in which the trial court resolved disputed questions of material fact, we owe no deference at all to the trial court with respect to questions of law, and instead, we must apply the law ourselves to the material facts.").

1. Addressing the State's third argument first, it contends the trial court erred in finding Cabbel had standing to challenge the search as an "invited guest" at the residence such that he had a privacy interest in the area searched. We disagree.

In reviewing a ruling on a motion to suppress, the threshold question is whether the defendant has "standing to challenge the seizure of the evidence."[38] Of course, in accordance with the Fourth Amendment to the United States Constitution,[39] a search warrant in Georgia may issue "only upon facts sufficient to show probable cause that a crime is being committed or has been committed."[40] And because Fourth

---

[38] *State v. Jackson*, 243 Ga. App. 330, 330 (533 SE2d 433) (2000); *see Hampton v. State*, 295 Ga. 665, 669 (2) (763 SE2d 467) (2014) ("[D]emonstrating standing is a threshold burden for suppression of the evidence."); *Albright v. State*, 354 Ga. App. 538, 543 (1) (b) n.3 (841 SE2d 171) (2020) (noting that "a movant's standing to challenge a search or seizure is a threshold issue that a court must address when ruling on the motion to suppress").

[39] *See* U.S. CONST. amend IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."). GA. CONST. Art. 1, Sec. 1, Par. XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized.").

[40] *Whitfield v. State*, 337 Ga. App. 167, 169 (786 SE2d 547) (2016) (punctuation and footnote omitted); *accord State v. Palmer*, 285 Ga. 75, 77 (673 SE2d 237) (2009).

Amendment rights are "personal, a defendant may move to suppress evidence obtained through an illegal search and seizure only when his own rights were violated."[41] Indeed, as a general rule, a person who is "aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."[42] Finally, the burden is "on the one claiming a violation of Fourth Amendment rights to demonstrate that [he has] standing to contest such violation, i.e., that he has a legitimate expectation of privacy in the premises searched or the property seized."[43]

Here, although Cabbel did not own, rent, or live in the residence searched, the trial court found he had standing to challenge the search as a regular overnight, invited

---

[41] *Jones v. State*, 320 Ga. App. 681, 685 (2) (740 SE2d 655) (2013) (punctuation omitted); *see Jackson*, 243 Ga. App. at 330 ("As the United States Supreme Court held, . . . . Fourth Amendment rights are personal in nature and may be enforced only at the instance of the person whose protection was infringed by the search and seizure." (citation omitted)).

[42] *Jones*, 320 Ga. App. at 685 (2) (punctuation omitted); *accord State v. Carter*, 305 Ga. App. 814, 816 (1) (701 SE2d 209) (2010).

[43] *Jones*, 320 Ga. App. at 685 (2) (punctuation omitted); *Carter*, 305 Ga. App. at 816 (1).

guest in the home—*i.e.*, he had stayed there two or three nights prior to the 9:00 a.m. execution of the warrant. In this regard, the Supreme Court of Georgia has held that "[a] person . . . may have a legitimate expectation of privacy in a house in which the person is an overnight guest; however, one who is merely present with the consent of the householder may not claim [Fourth Amendment protection]."[44] Similarly, like a householder, the registered guest of a hotel room has "an expectation of privacy in that room."[45] And whether this same protection applies to a guest of a homeowner is

---

[44] *Smith v. State*, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008) (punctuation omitted); *see Jones*, 320 Ga. App. at 685 (2) ("[O]vernight guests in a private residence may have a legitimate expectation of privacy in that residence. A person who is merely present with the consent of the householder, however, has no such expectation." (punctuation and citation omitted)); *see also generally Minnesota v. Olson*, 495 U. S. 91, 96-100 (110 SCt 1684, 109 LEd2d 85) (1990) (holding that an "overnight guest has a legitimate expectation of privacy in his host's home" within the meaning of the Fourth Amendment); *but see Minnesota v. Carter*, 525 U. S. 83, 96-97 (119 SCt 469, 142 LEd2d 373) (1998) (Scalia, J., dissenting) (noting that the Supreme Court "went to the absolute limit of what text and tradition permit in *Minnesota v. Olson* . . . when we protected a mere overnight guest against an unreasonable search of his hosts' apartment.").

[45] *Smith*, 284 Ga. at 21 (3); *see Smith v. State*, 302 Ga. App. 128, 134 (2) (a) (690 SE2d 449) (2010) ("Our case law establishes that an individual has a reasonable expectation of privacy in a motel room only if he or she: (i) is a registered guest of the room in question; or (ii) is staying at least overnight in the room, at the invitation of the registered guest." (punctuation omitted)).

determined "based on the status of the guest."[46] But if the guest is only a "casual visitor, as opposed to an overnight guest, the guest does not have the same expectation of privacy as the [homeowner]."[47] Needless to say, this is a fact-based inquiry and one falling squarely within the purview of the trial court, and we will not disturb its findings in this regard unless they are clearly erroneous.[48]

---

[46] *Smith*, 284 Ga. at 21 (3).

[47] *Smith*, 284 Ga. at 21 (3); *accord State v. Carter*, 299 Ga. App. 3, 5 (681 SE2d 688) (2009).

[48] *See Williams v. State*, 301 Ga. 60, 61, 799 S.E.2d 779, 780 (2017) (explaining that when reviewing a trial court ruling on a motion to suppress, an appellate court must accept those findings unless they are clearly erroneous, construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and limit its consideration of the disputed facts to those expressly found by the trial court). *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010) ("[W]hen a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. [Additionally], the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous."(punctuation omitted)); *see also People v. McCauley*, 2018 IL App (1st) 160812, ¶ 30 (124 NE3d 21, 26–27) (Il. App. 2018) (noting that a "fact-intensive and nuanced inquiry" is required in determining whether "a defendant may contest the legality of a search or seizure" under the Fourth Amendment) (cleaned up); *State v. Gonzalez*, 423 P3d 117, 120 (Or. App. 2018) (noting that "[t]he scope of an invitation to be on or to use property is inherently a fact-based inquiry that is affected by property-law principles . . . and societal norms . . . .").

As previously mentioned, the trial court found Cabbel had a reasonable expectation of privacy in Robertson's home because he was a regular overnight guest—he had been staying at the residence for a few days prior to the execution of the search warrant and had clothes and other personal items with him at the time. The State disagrees and argues at length that the evidence did not support the trial court's findings. But at the hearing on the motion to suppress, Cabbel testified that he had been staying in Robertson's home for three or four days prior to the execution of the search warrant. Further, Cabbel testified that, at the time, he had a "bag full of clothes and shoes" and toiletries in Robertson's home. Even so, the State notes that Cabbel told law enforcement he had not stayed overnight there. Additionally, the State claims that there was no evidence Cabbel was in Robertson's home with his permission. But there was evidence the two men went to school together and Cabbel stayed overnight in the home regularly in a designated room; and no evidence suggested Robertson ever reported him to police as an unwelcome intruder. There was, then, at least *some* evidence that Cabbel was a welcomed guest in Robertson's home.

Regardless, on appeal from a motion to suppress, the evidence is "viewed in a light most favorable to upholding the trial court's judgment."[49] So, to the extent there was conflicting evidence as to whether Cabbel was a welcomed overnight guest in Robertson's home for several days preceding the search, it was the trial court's duty to "resolve conflicts in the evidence, and its findings of credibility and fact will not be disturbed on appeal unless they are clearly erroneous."[50] And here, construing the evidence in favor of the trial court's factual findings (which we are bound to do), its determination that Cabbel had standing to challenge the search warrant was not clearly erroneous.[51]

---

[49] *Sanders v. State*, 247 Ga. App. 170, 170 (543 SE2d 452) (2000) (punctuation omitted); *see State v. Perry*, 349 Ga. App. 475, 475 (825 SE2d 902) (2019) ("[W]hen the facts material to a motion to suppress are disputed, it generally is for the trial judge to resolve those disputes and determine the material facts. If the trial court has made express findings of fact, we must accept those findings unless they are clearly erroneous, construe the evidentiary record in the light most favorable to the factual findings and judgment of the trial court, and limit our consideration of the disputed facts to those expressly found by the trial court." (punctuation omitted)).

[50] *Eichelberger v. State*, 252 Ga. App. 801, 803 (1) (557 SE2d 439) (2001) (punctuation omitted); *accord Thompson v. State*, 234 Ga. App. 74, 74 (1) (506 SE2d 201) (1998).

[51] *See Snider v. State*, 292 Ga. App. 180, 182 (663 SE2d 805) (2008) (holding that "[e]ven though the hotel room was not registered in [the defendant's] name, because [he] occupied the hotel room as an overnight guest, he had a constitutionally

2. The State also argues the trial court erred by failing to follow this Court's instruction in *Cabbel I* to clarify its initial cursory ruling denying Cabbel's motion to suppress.[52] Again, we disagree.

Specifically, the State contends that—given our express instruction in *Cabbel I* to clarify its earlier order summarily *denying* Cabbel's motion to suppress

---

protected reasonable expectation of privacy in the room"); *State v. Brown*, 212 Ga. App. 800, 803 (2) (442 SE2d 818) (1994) (holding that defendant had a legitimate expectation of privacy in someone else's apartment when he was a frequent welcome social visitor, he left possessions there, and he had spent the night as a social guest). *Cf. Smith*, 284 Ga. at 21 (3) (finding that defendant did not have an expectation of privacy in a hotel room when he failed to establish that he was sharing a room with the registered guest, and there was no evidence he had a key to the room or that he had any luggage there); *Jones*, 320 Ga. App. at 685 (2) (holding defendant lacked standing to challenge a search in another person's home when, although he had been a casual visitor there, there was no evidence that he ever spent the night there or that the police found any of his clothing, toiletries, or other personal effects); *Floyd v. State*, 237 Ga. App. 586, 587 (516 SE2d 96) (1999) (holding the trial court did not err in finding the defendant was a transient visitor in the hotel room searched with no expectation of privacy when he testified that he did not rent the room, it belonged to someone else, he was not staying there, and had only been visiting for a few minutes).

[52] At oral argument, the State suggested the trial court's order should be reversed because it reconsidered the suppression issue on remand after "several terms of court had expired." *See generally* https://vimeo.com/871883408?share=copy (last visited January 18, 2024). But the State did not make this argument in its brief, and so it is abandoned. *See* Ct. App. R. 25 (d) (1) (i) ("Any enumeration of error that is not supported *in the brief* by citation of authority or argument may be deemed abandoned." (emphasis supplied)).

17

evidence—the trial court erred in reconsidering and *granting* the motion upon remand. But the denial of a pre-trial suppression motion—an interlocutory evidentiary ruling—is "subject to review by the presiding judge ex mero motu."[53] And as a result, the trial court may, "within its sound discretion, consider anew a suppression motion previously denied."[54]

In *Cabbel I*, this Court did not address the merits of whether the trial court's initial denial of Cabbel's suppression motion was erroneous, and nothing in the opinion prohibited that court from exercising its discretion to alter its ruling before the final judgment. Instead, we simply found the trial court's cursory order was insufficient to establish its reasoning for the denial. This Court's *only* instruction was

---

[53] *State v. Hall*, 229 Ga. App. 194, 196 (2) (a) (493 SE2d 718) (1997); *accord Tucker v. State*, 231 Ga. App. 210, 213 (1) (b) (498 SE2d 774) (1998); *see* OCGA § 15-1-3 (1), (6)-(7) ("Every court has power: . . . [t]o amend and control its processes and orders, so as to make them conformable to law and justice, and to amend its own records, so as to make them conform to the truth; and . . . [t]o correct its own proceedings before final judgment.").

[54] *Hall*, 229 Ga. App. at 196 (2) (a) (punctuation omitted); *see Schramm v. State*, 286 Ga. App. 156, 159 (5) (648 SE2d 392) (2007) ("The decision of whether to set aside its previous order denying the motion to suppress is within the discretion of the trial court . . . ."); *Huntley v. State*, 244 Ga. App. 212, 213 (2) (535 SE2d 270) (2000) (same).

for the trial court to clarify its decision; and the State does not claim the court's order fails to adequately explain its decision to grant Cabbel's motion.

Indeed, upon remand (after reconsidering the motion anew), the trial court issued a detailed six-page order granting Cabbel's motion to suppress evidence with a clear explanation of its reasons for doing so (along with supporting legal authority). Specifically, as explained in Division I *supra*, the trial court correctly found Cabbel had standing to challenge the search of Robertson's home. The court also explained its ruling that the warrant was improper on its face because it failed to "describe with some degree of specificity the places to be searched and items to be searched for and seized." So, even setting aside the merits of those rulings, the State's claim that the trial court failed to issue a new order clarifying the basis for its ruling on Cabbel's interlocutory motion is belied by the record.[55]

---

[55] *See State v. Mojica*, 316 Ga. App. 619, 623-24 (2) (b) (730 SE2d 94) (2012) (affirming the trial court's grant of the defendant's motion to suppress evidence after it previously denied the motion); *Hall*, 229 Ga. App. at 196 (2) (a) (affirming the trial court's grant of a motion to suppress evidence by a third trial judge even though the first judge "chose to believe the testimony of policy, and originally denied the first motion, and the second judge denied reconsideration" (punctuation omitted)); *State v. Marcus*, 206 Ga. App. 385, 386 (1) (425 SE2d 351) (1992) (holding the trial court did not err in reconsidering its previous order denying a motion to suppress evidence and granting the motion).

3. Lastly, the State argues the trial court was not authorized to grant a motion to suppress evidence as a "type of discovery sanction for [its] failure to tender a recording of the magistrate's pre-issuance hearing." Once again, we disagree.

Contrary to the State's argument, it is evident from the trial court's order that it granted Cabbel's motion on the *merits* because the search warrant was "improper on its face" due to a lack of specificity. And while the court summarily found as an alternative basis for its ruling that the State's failure to produce certain evidence was a "fatal defect," it *never* suggested that it granted Cabbel's motion as a sanction on the State for failing to produce evidence.[56] Regardless, the evidentiary issues are irrelevant, as the State does not challenge the trial court's ruling that Cabbel satisfied

---

[56] The only ruling in the trial court's order related to discovery was cursory and *in addition* to its finding on the merits that the search warrant was defective. Specifically, the court stated: "At the suppression hearing, the State failed to introduce 'oral testimony, given under oath, received[,] and recorded. This omission constitutes a fatal defect of the State to meet its initial burden of proof[ ] and mandates that this Court must grant the motion to suppress." But the court's ruling made no mention of sanctions; and in any event, the insufficiency of the search warrant—which the State does not challenge—was an alternative reason for the trial court granting Cabbel's motion.

that burden because the warrant was improper. As a result, we do not address that issue and presume the trial court's ruling in this regard was correct.[57]

For all these reasons, we affirm the trial court's grant of Cabbel's motion to suppress evidence and its denial of the State's motion for reconsideration.

*Judgment affirmed. Rickman and Pipkin, JJ., concur.*

---

[57] *See Grogan v. City of Dawsonville*, 305 Ga. 79, 89 (4) n.7 (823 SE2d 763) (2019) (explaining that the Court will not address potential issue or argument that appellant did not raise on appeal); *Hewitt v. Community & S. Bank*, 324 Ga. App. 713, 716 (2) (751 SE2d 513) (2013) ("Grounds that are not attacked as erroneous will not be considered on appeal and are presumed to be binding and correct. An appellant's failure to attack alternative bases for a judgment results in the affirmance of that judgment." (punctuation omitted)); *Robinson v. Robinson*, 239 Ga. 323, 324 (1) (236 SE2d 660) (1977) (deeming argument abandoned for purposes of appeal when it was not supported by argument or citation of authority as required by rules); *Reed v. City of Atlanta*, 136 Ga. App. 193, 194 (4) (220 SE2d 492) (1975) (holding that an enumeration of error neither argued nor briefed on appeal is considered abandoned).