## A10A0954. THE STATE v. CARTER et al.
(701 SE2d 209)

DOYLE, Judge.

The State charged Nicholas Carter with trafficking in cocaine,[1] possession of marijuana with intent to distribute,[2] theft by receiving stolen property,[3] and possession of a firearm during the commission of a felony.[4] Shadarian Mitchell was charged with trafficking in cocaine, possession of marijuana with intent to distribute, and possession of a firearm during the commission of a felony, and Deante White was charged with trafficking in cocaine, possession of marijuana with intent to distribute, possession of a firearm during the commission of a felony, and two counts of possession of a firearm by a convicted felon.[5] Carter, Mitchell, and White moved to suppress the evidence obtained by the State, and the trial court granted the motion. The State appeals the suppression, and we affirm in part and reverse in part, for reasons that follow.

When reviewing a ruling on a motion to suppress, we view all evidence in the light most favorable to uphold the trial court's findings and judgment, and we accept the trial court's findings on disputed facts and credibility unless clearly erroneous.[6] So viewed, the evidence showed that Shondorrea Smith rented a house located at 180 Toni Place in Atlanta on February 17, 2009. The lease prohibited Smith from subletting the house or assigning the lease without the written consent of management, provided that the house could only be occupied by persons named as residents in the lease, and prohibited "[o]ccupancy by guests staying over several days."[7] The lease also prohibited Smith from making alterations to the premises.

The property manager, Luke Shirah, called Smith several times in March 2009 to discuss her overdue rent and a drainage problem on the property. Shortly before noon on March 17, 2009, Shirah went to the house to inspect the drainage problem and to collect the rent. Shirah, who knew that Smith did not have a car, noticed three vehicles parked at the house when he arrived. He also observed several broken windows and saw that someone had added a security door to the front entrance of the house. Shirah knocked on the door, but no one responded. He then reached through the open window

---

[1] OCGA § 16-13-31 (a) (1) (A).

[2] OCGA § 16-13-30 (b).

[3] OCGA § 16-8-7 (a).

[4] OCGA § 16-11-106 (b) (4).

[5] OCGA § 16-11-133 (b) (4), (5).

[6] See *State v. Mallard*, 246 Ga. App. 357 (541 SE2d 46) (2000).

[7] Smith was the only resident listed in the lease.

adjacent to the door and pulled the blinds aside. According to Shirah, he could smell marijuana through the window. Shirah yelled into the window, identifying himself as "property management," but no one responded. He then left the house, got in his car, and parked around the corner to watch the house. A short time later, he saw an unidentified woman exit the house, and he approached and "told her . . . I was just knocking on that door. How did you just come out of there? What's going on? How did you get in there?" The woman responded simply that she was getting into her car, and she left.

Because he was concerned about the broken windows, the cars he did not recognize, the unauthorized security door that had been installed, and the smell of marijuana, Shirah called the police. Upon arriving at the home, Officer Jason Fouse spoke with Shirah, who voiced his concerns, and then Fouse approached the house and knocked on the front door. According to Fouse, he could smell "fresh, burnt marijuana." No one responded, and Fouse called for backup. Officer Keith Backmon arrived a few minutes later, approached the house, and knocked on the door, identifying himself as a police officer. Backmon testified that he could smell marijuana coming from one of the broken windows. White answered the door, and Backmon asked him if he lived in the house; White told the officer that he did not live there, but that he was visiting his girlfriend, "Big Red," who lived in the house.[8] Carter also came to the door, and he denied that he lived in the house.

Shirah gave the police permission to enter the house, explaining that he wanted to collect the rent, make repairs, and see if there was damage to the property or if there was anything illegal inside the house. The police then entered the house, where they found Mitchell, who also denied that he lived at the house, sleeping in a bedroom. Once inside, the police found drugs, scales, baggies, and a handgun. The police also conducted what they characterized as "an inventory search" of Carter's vehicle and found two handguns.

Following his arrest, White filed a motion to suppress. Shirah and the two officers testified at the hearing, after which the trial court denied the motion. White moved for reconsideration, and Carter and Mitchell moved to adopt White's motions, which included the motion to suppress. Following a second hearing,[9] the trial court granted the defendants' motion to suppress.

1. *Evidence from the house.* The State contends that the trial court erred by granting the defendants' motion to suppress because

---

[8] White did not know Big Red's real name.

[9] There was no evidence introduced at the second hearing. Instead, the lawyers presented argument to the trial court.

the property manager was authorized to consent to the police officers' entry into the house and subsequent search.

"It is well established . . . that the status of landowner and/or landlord does not in itself give one the authority to consent to a search of a tenant's residence."[10] And while a third party may lawfully consent to the entry into another person's property,

> the authority which justifies the third-party consent does not rest upon the law of property, but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.[11]

Here, the State presented no evidence that would give rise to a finding that the property manager had mutual use or joint access to the house at issue.[12]

Nevertheless, pretermitting whether the officers' entry into the house was authorized based on Shirah's consent, the defendants lacked standing to contest the search. "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."[13] "The burden is on the one[s] claiming a violation of Fourth Amendment rights to demonstrate that [they have] standing to contest such violation, i.e., that [they have] a legitimate expectation of privacy in the premises searched."[14]

Here, the defendants failed to demonstrate that they had a legitimate expectation of privacy in the house. White told the officers that the house belonged to his girlfriend, but there was no evidence that his girlfriend was Smith, the woman who rented the house. There was no evidence regarding how long he and the other two defendants had been at the house, that the renter had authorized

---

[10] *Bowden v. State*, 304 Ga. App. 896, 898 (698 SE2d 372) (2010). See *Looney v. State*, 293 Ga. App. 639, 642 (667 SE2d 893) (2008); *Arnold v. State*, 237 Ga. App. 857, 859 (1) (517 SE2d 97) (1999); *State v. Oliver*, 183 Ga. App. 92, 94 (357 SE2d 889) (1987); *Browning v. State*, 176 Ga. App. 420, 421 (1) (336 SE2d 41) (1985).

[11] (Punctuation omitted.) *Bowden*, 304 Ga. App. at 898.

[12] In fact, Shirah testified that he did not have a key to the recently installed security door, and he did not know whether he had a key to the side door of the house. Thus, there was no evidence that Shirah could have physically gained entry to the house.

[13] *Rakas v. Illinois*, 439 U. S. 128, 134 (II) (A) (99 SC 421, 58 LE2d 387) (1978).

[14] *Atwater v. State*, 233 Ga. App. 339, 340 (2) (503 SE2d 919) (1998).

them to be there, or that they were overnight guests.[15] The house, which police described as a "drug house," contained very little furniture, including a small couch, a kitchen table, a large television, an air mattress, and a PlayStation game console. The police found no clothing or other indication that a woman lived there, and although they found men's clothing, there was no evidence that it belonged to any of the defendants. Based on the record, we conclude that the defendants failed to demonstrate that they had standing to contest the search, and therefore, the trial court erred by granting the defendants' motion to suppress the evidence found in the house.[16]

2. *Evidence from Carter's car.* The State also argues that the trial court erred by suppressing the handguns found in Carter's car. We disagree.

"In the interests of public safety and as part of what the Court has called 'community caretaking functions,' automobiles are frequently taken into police custody."[17] The police may inventory the contents of a vehicle that has been lawfully impounded, but they "may not use an impoundment or inventory as a medium to search for contraband."[18] "The individual's right of privacy is superior to the power of police to impound a vehicle unnecessarily."[19]

> Impoundment of a vehicle is valid only if there is some necessity for the police to take charge of the property. In each instance, the ultimate test for the validity of the police's conduct is whether, under the circumstances then confronting the police, their conduct was reasonable within the meaning of the Fourth Amendment.[20]

---

[15] The defendants rely on the statements of defense counsel at the second suppression hearing that the defendants had been at a club the night before the arrest, that they spent the night at the house at the invitation of a woman named "Red," and that Mitchell engaged in sexual relations with another woman at the house. One of the defense attorneys also indicated that "Mr. Watt [sic] had keys to the property[,] and the police found those keys in the possession of Mr. Watt [sic]." But statements of counsel are not evidence, and there is no evidence that the State stipulated to such factual assertions. See *Bennett v. State*, 266 Ga. App. 502, 504 (1) (597 SE2d 565) (2004); *Anthony v. State*, 213 Ga. App. 303, 305 (2) (444 SE2d 393) (1994).

[16] See *Todd v. State*, 275 Ga. App. 459, 461 (1) (620 SE2d 666) (2005) (motion to suppress properly denied because the defendant failed to demonstrate that he had a reasonable expectation of privacy in his friend's mobile home); *Atwater*, 233 Ga. App. at 340-341 (2) (motion to suppress properly denied because the defendant failed to meet his burden to show that he had standing to challenge police officers' entry into the room that his girlfriend was renting).

[17] (Citation and punctuation omitted.) *State v. Lowe*, 224 Ga. App. 228, 229 (480 SE2d 611) (1997).

[18] Id.

[19] (Punctuation omitted.) *Strobhert v. State*, 165 Ga. App. 515, 516 (301 SE2d 681) (1983).

[20] (Citation and punctuation omitted.) *Lowe*, 224 Ga. App. at 229-230.

The relevant issue, therefore, is whether the impoundment of the searched vehicle was reasonably necessary.[21]

In *State v. Lowe*, we affirmed the suppression of marijuana and a gun found in the defendant's car pursuant to an inventory search because

> the misdemeanor offense for which he was arrested was in no way related to the vehicle; the vehicle was legally parked in a safe and secure place on private property; the owner of the private property did not request that the vehicle be removed; and Lowe was not asked if there was anyone who could retrieve the vehicle.[22]

Similarly, in *Mitchell v. State*,[23] we concluded that the State failed to establish that the impoundment of Mitchell's car was reasonably necessary, noting that "[t]here was no evidence of any connection between the car and appellant's arrest, no evidence that the car was illegally parked or was a hazard to traffic, or that appellant was consulted regarding alternate disposition of the vehicle."[24] In *State v. Bell*,[25] we held that the trial court was authorized to grant the defendant's motion to suppress because the arrest was unconnected with the defendant's car, which was legally parked on private property, and the police did not ask the defendant whether there was anyone who could retrieve the car.[26]

Here, Backmon testified that "[a]fter everybody was detained and arrested, we did [an] inventory search of [Carter's] vehicle, and I found . . . two handguns. . . ." But neither Backmon, Fouse, nor any other witness testified that the police impounded Carter's car. There was no testimony that the vehicle was illegally parked. And it is unclear whether Carter's vehicle was parked in the driveway or on the street.[27] Assuming that it was parked in the driveway, there was no direct evidence that the owner of the house requested that the vehicle be moved. Further, there is no evidence that the police asked Carter whether anyone could retrieve his car. Under these circum-

---

[21] See id. at 230.

[22] Id. at 231.

[23] 178 Ga. App. 244 (342 SE2d 738) (1986).

[24] Id. at 245-246 (3).

[25] 259 Ga. App. 328 (577 SE2d 39) (2003).

[26] See id. at 330.

[27] At the suppression hearing, Fouse agreed with defense counsel that the police "search[ed] all the vehicles in the driveway." It is unclear from this testimony, however, whether *Carter's* vehicle was parked in the driveway when it was searched. And although the prosecutor indicated at the second suppression hearing that Carter's car was parked on the street, as previously stated, statements of counsel are not evidence. See *Bennett*, 266 Ga. App. at 504 (1).

stances, the trial court was authorized to find that the inventory search was improper and not reasonably necessary.[28]

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 2, 2010.

*Paul L. Howard, Jr., District Attorney, John O. Williams, Assistant District Attorney*, for appellant.

*Jennifer Lubinsky, Max C. Richardson, Jr., Joseph L. Roberto, Dasha M. Jackson, Heather L. McPhillip*, for appellees.

---

[28] See *Bell*, 259 Ga. App. at 330; *Lowe*, 224 Ga. App. at 231; *Mitchell*, 178 Ga. App. at 245-246 (3); *Strobhert*, 165 Ga. App. at 516 (reversing the denial of the defendant's motion to suppress because the defendant's vehicle was unconnected to the arrest and was legally parked, and the police made no effort whatsoever to determine whether the defendant could make alternative arrangements to have the vehicle moved).