In the Supreme Court of Georgia

Decided: September 22, 2014

S14A0901.  BROWN v. THE STATE.

HUNSTEIN, Justice.

Appellant Tyrone Vincent Brown was convicted by a jury of murder and related offenses for the March 20, 2006 shooting deaths of Stanley Brown and Norris Degree.  Appellant appeals the denial of his amended motion for new trial, contending that the trial court erroneously denied his motion to suppress. Finding no error, we affirm.[1]

---

[1] On March 28, 2007, a Clayton County grand jury indicted Appellant, along with co-defendants Kevin Michael Brewington and Gary Hakeem Brown, each with two counts of malice murder, four counts of felony murder, armed robbery, two counts of aggravated assault, two counts of possession of a weapon during the commission of a crime, discharge of a firearm near a highway, and discharge of a firearm on the property of another.  The grand jury also charged Appellant with possession of a firearm by a convicted felon.  Brewington and Gary Brown were initially tried before a jury from November 16-24, 2009, and Appellant's trial was severed from that of his co-defendants.  The trial of Brewington and Gary Brown resulted in mistrial due to a hung jury.  Thereafter, during June 13-22, 2011, Appellant and his co-defendants were tried before a jury.  On June 22, 2011, the jury returned a verdict of guilty on all counts as to Appellant, except that for possession of a firearm by a convicted felon, which was nolle prossed.  The court declared a mistrial on all counts as to co-defendants Brewington and Gary Brown.  On June 24, 2011, the court sentenced Appellant to life imprisonment for the malice murder of

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. On March 20, 2006, victim Norris Degree told his wife he was leaving their apartment to pick up victim Stanley Brown from work. Later that evening, Degree's wife, who was waiting for him at their apartment, heard gunshots in the distance. Moments later, Degree abruptly entered his apartment and told his wife to call for an ambulance because he and Stanley Brown had been shot. Through his wife, Degree relayed to the 911 operator that he and Stanley Brown had been shot by three black men wearing all black clothing and that he did not know the identities of the men. A Clayton County police officer responded to the 911 call and found Stanley Brown dead on the ground outside an apartment. The officer found Degree lying in the doorway of an apartment surrounded by his wife and three children and

Stanley Brown; a consecutive life term for the malice murder of Norris Degree; a concurrent 20-year term for armed robbery; two consecutive five-year terms, to be served concurrently with each other, for the weapons possession counts; and a 12-month term, suspended based on time served, for each count of discharge of a weapon near a highway and discharge of a weapon on the property of another. The remaining counts merged or were vacated as a matter of law. Appellant filed a motion for new trial on June 28, 2011, which was amended on October 9, 2012. The trial court held a hearing on Appellant's motion for new trial on October 31, 2012, and denied the motion in an order entered November 2, 2012. Appellant filed a notice of appeal on November 19, 2012. The appeal was docketed to the April 2014 term of this Court and submitted for a decision on the briefs.

struggling to breathe. Degree died moments later.

Shannon Dean, who lived in same apartment complex as Degree, testified at trial that she knew Appellant, and on the evening of the shooting, all three co-defendants came to her apartment looking for marijuana, with Appellant carrying a gun. Shortly after the three men left her apartment, she heard six or seven gunshots in succession. Dean testified that she went outside to a balcony and saw all three co-defendants shooting the two victims, who were on their knees and unarmed. Dean made direct eye contact with Appellant and then ran into her apartment, where she stayed until police arrived. Dean later identified all three co-defendants in photographic lineups as well as at trial.

On March 23, 2006, local and federal law enforcement officials converged on apartment Z1 at the same apartment complex where the shootings had occurred to serve a fugitive arrest warrant on Brewington. Officers found Brewington, Appellant, and a female in apartment Z1 and placed Brewington and Appellant in custody. Officers conducted a security sweep of apartment Z1, and based on their observations, officers applied for both a federal and state search warrant. Pursuant to these search warrants, officers discovered several firearms and ammunition.

3

A forensic pathologist determined that Stanley Brown died of multiple gunshot wounds, including wounds to his chest and heart, and Degree died of a gunshot wound to his back, which pierced his lung. Bullet fragments recovered from each of the victims were fired from a Taurus nine millimeter pistol, and other bullet fragments recovered solely from victim Stanley Brown were fired from a Smith and Wesson .38 caliber revolver and a Rossi .38 special revolver. Among the firearms found in apartment Z1 on March 23 were a Taurus nine millimeter pistol, a Smith and Wesson .38 caliber revolver, and a Rossi .38 special revolver.

1. Though Appellant has not enumerated the general grounds, we find that the evidence as summarized above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Appellant was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979); see also Vega v. State, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'") (citation omitted).

2. Prior to trial, the court denied Appellant's motions to suppress all

4

evidence allegedly illegally obtained by law enforcement agents during the search of apartment Z1 on March 23. On appeal, Appellant argues the court erroneously denied his motions to suppress because the State failed to prove that the arrest warrant for Brewington existed and failed to show that the protective sweep of apartment Z1, which led to the search warrants, was legally permissible. As a result, Appellant contends that all of the evidence obtained through the execution of the search warrants should have been excluded.

"On appellate review of a ruling on a motion to suppress, 'the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review.'" Registe v. State, 292 Ga. 154, 155-156 (734 SE2d 19) (2012). Upon review, we consider both the transcript of the hearing on Appellant's motions to suppress as well as the trial transcript. See White v. State, 263 Ga. 94 (5) (428 SE2d 789) (1993).

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. Const. Amend. IV; see Ga. Const. of 1983, Art. I, Sec. I, Par. XIII.

> "In order to claim the protection of the Fourth Amendment [against unreasonable search and seizure], a defendant must demonstrate that he personally has an expectation of privacy in the place searched,

and that his expectation is reasonable . . . ." A person has a legitimate expectation of privacy in his or her home and may have a legitimate expectation of privacy in a house in which the person is an overnight guest; however, "one who is merely present with the consent of the householder may not [claim the protection of the Fourth Amendment]."

Smith v. State, 284 Ga. 17, 21 (3) (663 SE2d 142) (2008) (citations omitted) (brackets in original) (quoting Minnesota v. Carter, 525 U. S. 83, 88, 89-90 (119 SCt 469, 142 LE2d 373) (1998)). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." Rakas v. Illinois, 439 U. S. 128, 134 (II) (A) (99 SCt 421, 58 LE2d 387 (1978)). "'The burden is on the defendant to show that he has standing to contest the alleged violation, i.e., that he has a legitimate expectation of privacy in the premises searched.'" State v. Carter, 299 Ga. App. 3, 4 (681 SE2d 688) (2009).

The evidence shows that apartment Z1 was leased to a third party, and there was no evidence of how long Appellant had been in the apartment or whether he was an overnight guest.[2] There was also no evidence of any of

[2]The affidavit prepared by one of the officers in support of his application for a search warrant states that the female found in apartment Z1 told the officer that

Appellant's personal belongings in the apartment. The only possible exception is that one officer testified that he found "paperwork" in the apartment with Appellant's name on it, but the officer did not elaborate further. There was no evidence presented to show what this paperwork consisted of and why it was at the apartment. The mere presence of miscellaneous papers bearing Appellant's name, without any further evidence connecting Appellant to the apartment, is insufficient to create a legitimate expectation of privacy for Appellant to contest the search. Cf. Moses v. State, ___ Ga. App. ___, 760 SE2d 217 (2) (a) (2014) (the defendant had an expectation of privacy in the house which he owned, where he received mail, and where he kept personal property including identification and personal papers). We find that Appellant has not met his burden to demonstrate that he had any legitimate expectation of privacy in apartment Z1, and therefore, he may not claim the protections of the Fourth Amendment to challenge the search. See State v. Carter, 305 Ga. App. 814 (1) (701 SE2d 209) (2010) (no legitimate expectation of privacy to contest a search where there was no evidence of how long the defendants had been at the house,

_____

Appellant lived in the apartment. This is inadmissible hearsay. See former OCGA § 24-3-1, now codified at OCGA § 24-8-801 under the new Georgia Evidence Code.

7

that the renter had authorized defendants to be there, or that they were overnight guests); Todd v. State, 275 Ga. App. 459 (1) (620 SE2d 666) (2005) (no legitimate expectation of privacy where the defendant conceded that the mobile home was owned by a friend and he failed to come forward with any evidence to suggest that he had a legitimate expectation of privacy in the mobile home). Accordingly, the trial court did not err in denying Appellant's motions to suppress.

Judgment affirmed. All the Justices concur.