**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 6, 2018**

# In the Court of Appeals of Georgia

A17A1886. THE STATE v. CHARLES.                    DO-063 C

DOYLE, Presiding Judge.

Alysia Charles was charged with driving under the influence of drugs,[1] alcohol,[2] and a combination thereof,[3] as well as misdemeanor possession of marijuana,[4] driving with defective equipment,[5] and driving without insurance.[6] The evidence of these crimes was gathered, in large part, during a traffic stop. She moved

---

[1] OCGA § 40-6-391 (a) (2).

[2] OCGA § 40-6-391 (a) (1).

[3] OCGA § 40-6-391 (a) (4).

[4] OCGA §§ 16-13-2 (b); 16-13-30 (j).

[5] OCGA § 40-8-7 (a).

[6] OCGA § 40-6-10 (b).

to suppress this evidence, and the trial court granted the motion, in part. The State contends that the trial court erred by finding that the roadside stop was not authorized because it was outside of the officer's jurisdiction. Because the stop was authorized under the "hot pursuit" doctrine, we reverse.

"On appellate review of a ruling on a motion to suppress, the trial court's findings on disputed facts will be upheld unless clearly erroneous, and its application of the law to undisputed facts is subject to de novo review."[7] Here, the relevant facts are undisputed.

1. The record shows that just prior to dawn one morning, a Fayette County Sheriff's Deputy and his trainee were sitting in a marked patrol car in the entrance of a business in Fayette County when they observed Charles driving on the adjacent state highway with a defective tag light. They elected to make a traffic stop, and the trainee, who was driving, pulled the patrol car onto the highway to make contact with Charles. The speed limit on the highway was 55 miles per hour, and it took the officers approximately five or six tenths of a mile to catch up to Charles's vehicle "somewhere right around the Fayette County, Clayton County line." They followed

---

[7] (Punctuation omitted.) *Brown v. State*, 295 Ga. 695, 697 (2) (763 SE2d 710) (2014).

2

Charles approximately three additional tenths of a mile to level roadway where they activated their blue lights and executed the traffic stop. The deputy explained at the suppression hearing that they were "going from a dead stop to get up there to 55[, and] I'm not going to floor it to catch up with a car over a tag light. I'm not going to do that to catch up to them[;] in light traffic[,] I catch up to them [without difficulty]." He also explained that he is trained to make all of his traffic stops on level ground in the event that roadside sobriety testing is required.

Once Charles stopped, the deputy, who had training in drug recognition and impaired driving enforcement, was able to smell the odor of marijuana emanating from the car when Charles rolled down her window. His trainee smelled it also. When Charles stepped out of the vehicle, the deputy observed that she had bloodshot, glassy eyes; "droopy" eyelids; slurred speech; and slow movements. Based on those observations and the odor of marijuana, the deputy asked Charles to participate in standardized field sobriety testing, and Charles agreed. Once engaged with Charles, the deputy also smelled alcohol about Charles's person, and based on her performance on the field sobriety tests, as well as the observed odors, the deputy determined that he had probable cause to arrest her for DUI less safe due to drug and

3

alcohol consumption. In a search incident to the arrest, the deputy found a misdemeanor amount of suspected marijuana in Charles's purse.

Charles moved to suppress the evidence from the traffic stop, and following an evidentiary hearing, the trial court ruled that the stop was not authorized because it occurred outside of Fayette County and did not fall within the "hot pursuit" doctrine, but the court did not apply the exclusionary rule because the evidence discovered in the stop was too attenuated from the unlawful traffic stop. The State now appeals.[8]

The State argues that the trial court erred by ruling that the stop was not authorized under the "hot pursuit" doctrine. We agree.

Generally, "a peace officer has the power to make traffic stops and to arrest only in the territory of the governmental unit by which he was appointed."[9]

---

[8] OCGA § 5-7-1 (a) (4) permits the State to directly appeal "[f]rom an order, decision, or judgment suppressing or excluding evidence illegally seized . . . ." Although the trial court here did not end up excluding the evidence, it ruled that the traffic stop was illegal and purported to grant the motion to that extent. We assert jurisdiction to avoid any error at trial based on references to the illegality of the stop. See generally *State v. Morrell*, 281 Ga. 152, 153 (2) (635 SE2d 716) (2006) ("The legislature enacted OCGA § 5-7-1 and granted the State the right to an immediate appeal of suppression orders 'so that an error committed by a trial judge, which otherwise might work a miscarriage of justice, can be corrected on appeal, and before attachment of jeopardy.'").

[9] *Weldon v. State*, 291 Ga. App. 309, 310-311 (661 SE2d 672) (2008), disapproved on other grounds by *Zilke v. State*, 299 Ga. 232, 234, n. 2 (787 SE2d

4

[A]n exception to this rule[, however] is recognized in instances in which "hot pursuit" of an offender takes a [peace] officer beyond his geographical limits in order to effectuate an arrest. . . . [T]he fact that an officer does not engage in a high speed chase in the pursuit of a driver does not necessarily mandate a finding that the stop and arrest beyond the officer's territorial limits were unauthorized under the "hot pursuit" doctrine. Nor is there any requirement that the officer activate emergency lights or a siren before leaving his jurisdictional territory. *The critical elements characterizing "hot pursuit" are the continuity and immediacy of the pursuit, rather than merely the rate of speed at which pursuit is made.* A pursuing officer may, and should, wait to stop and arrest a suspect at the first opportunity for doing so which is, under the circumstances, *safe* for all concerned — the suspect, the officers and other motorists.[10]

Here, it is undisputed that the arresting deputies immediately began pursuit of Charles upon observing her broken tag light, which is a violation of OCGA § 40-8-7 (a), within their territorial jurisdiction, Fayette County. The deputy testified that the

---

745) (2016) (explicitly not addressing "hot pursuit" doctrine).

[10] (Citations and punctuation omitted; emphasis supplied.) *Page v. State*, 250 Ga. App. 795, 797 (553 SE2d 176) (2001). We note that *Page* relies in part on certain language in *State v. Gehris*, 242 Ga. App. 384 (528 SE2d 300) (2000), which has been disapproved of by *Zilke v. State*, 299 Ga. at 234, n. 2. But *Zilke* expressly declined to address the "hot pursuit" doctrine, so it does not control our analysis here. See *Zilke*, 299 Ga. at 235, n. 3.

speed limit was 55 miles per hour, and they began the pursuit from a standstill; nevertheless, they conducted the pursuit with due regard for safety, taking into account the relatively trivial nature of the observed offense. Further, the evidence also is undisputed that the pursuit was continuous until they executed the traffic stop in Clayton County less than one mile from the point at which they observed the offense. Under these facts, the decision to look for safe, level ground to execute the traffic stop did not interrupt the immediacy or continuity of the pursuit, nor did it materially add to the duration of the pursuit — the deputies stopped Charles less than a mile after starting from a standstill on a highway with a 55-mile-per-hour speed limit. Therefore, the trial court erred by concluding that the stop was not authorized under the "hot pursuit" doctrine,[11] and we reverse the judgment of the trial court granting Charles's motion to suppress.

2. In light of our holding above, we need not address the State's remaining enumerations.

*Judgment reversed. Miller, P. J., and Reese, J., concur.*

---

[11] See *Margerum v. State*, 260 Ga. App. 398, 399 (579 SE2d 825) (2003); *Page*, 250 Ga. App. at 797. See also *Brown*, 295 Ga. 695 (2) (a trial court's "application of the law to undisputed facts is subject to de novo review").