**SECOND DIVISION**
**MILLER, P. J.,**
**DOYLE, P. J., and REESE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 2, 2018**

# In the Court of Appeals of Georgia

A17A1780. THE STATE v. WRIGHT.                    DO-060 C

DOYLE, Presiding Judge.

The State appeals the grant of a motion to suppress filed by Michael Shaun Wright, who was arrested and charged with possession of a controlled substance with intent to distribute[1] (two counts), possession of cocaine with intent to distribute within 1,000 feet of a housing project,[2] felony possession of marijuana,[3] and possession of a firearm during the commission of a felony.[4] The State contends that the trial court erred by granting Wright's motion to suppress based on its ruling that

---

[1] OCGA § 16-13-30 (b).

[2] OCGA § 16-13-32.5 (b).

[3] OCGA § 16-13-30 (j) (1).

[4] OCGA § 16-11-106 (b) (4).

the search of an apartment yielding contraband was not conducted pursuant to valid consent given by Wright. Because Wright failed to meet his burden to establish standing to challenge the search, we reverse.

> When the evidence at a suppression hearing is uncontroverted and the credibility of witnesses is not in question, we conduct a de novo review of the trial court's application of the law to the undisputed facts. To the extent an issue concerns a mixed question of fact and law, we accept the trial court's findings on disputed facts and witness credibility unless they are clearly erroneous, but independently apply the law to the facts.[5]

The evidence from the suppression hearing was undisputed, consisting of testimony from three police officers present during the search challenged by Wright. The evidence shows that the Chatham-Savannah Counter Narcotics Team was conducting an early-morning "roundup" of suspects with outstanding arrest warrants. The team was given a list of suspects with descriptions or photographs and the locations where they were believed to reside and where they had been observed during previous surveillance. The officers arrived at one particular location, an apartment complex called Yamacraw Village, and knocked on the door of an

---

[5] (Punctuation omitted.) *Mitchell v. State*, 301 Ga. 563, 565 (802 SE2d 217) (2017), quoting *Jones v. State*, 291 Ga. 35, 36-37 (1) (727 SE2d 456) (2012).

apartment where police believed a suspect would be present. Wright soon came to the door and partially opened it, and the officers, who were in uniform with tactical gear, identified themselves and immediately recognized that Wright "obviously was not the subject we were looking for" based on his appearance. Police asked Wright if he knew the suspect, and Wright said no; police then asked if they could come inside and look for the suspect, and Wright agreed.

While Wright waited in the downstairs living area, the team of agents then entered the apartment and walked through the rooms to look for the suspect. On the second floor of the apartment, an officer entered a bedroom and immediately noticed a firearm and "a large amount" of suspected narcotics sitting in plain view on top of an ironing board. Alongside the suspected contraband on the ironing board were a food stamp card and an identification card with what police later learned was Wright's name on them. Police continued to search for the suspect, and upon completion of the search, the officer notified the team leader of the suspected contraband observed in the bedroom. After the team leader observed the contraband in plain view on the ironing board, police informed Wright that they had discovered the firearm and suspected narcotics, and they placed him in handcuffs. Police did not

question Wright at that time, but he made a few spontaneous statements attempting to explain and justify the presence of the firearm and suspected narcotics.

Police then asked Wright for consent to further search the residence for additional contraband, and Wright signed a written consent form agreeing to the search after being advised of his constitutional right not to have the premises searched without a warrant. No additional contraband was discovered in a subsequent search.

Wright was charged with possessing the firearm and suspected cocaine and marijuana found on the ironing board. He moved to suppress the evidence on the ground that the search was conducted pursuant to an invalid consent, and following an evidentiary hearing, the trial court granted the motion. The trial court ruled that the evidence adduced by the State at the hearing "fail[ed] to establish what relationship, if any, [Wright] had to the property at the time consent to search was purportedly given." Therefore, the court concluded that the State had "failed to carry its burden to provide evidence from which a factfinder may conclude that law enforcement had authority, apparent or otherwise, to enter the residence and that the search was therefore lawful." The State now appeals.

1. The State contends that the trial court erred by concluding that Wright met his burden to demonstrate standing to challenge the search of the apartment. We agree.

> In order to claim the protection of the Fourth Amendment against unreasonable search and seizure, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. A person has a legitimate expectation of privacy in his or her home and may have a legitimate expectation of privacy in a house in which the person is an overnight guest; however, one who is merely present with the consent of the householder may not claim the protection of the Fourth Amendment. A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. *The burden is on the defendant to show that he has standing to contest the alleged violation, i.e., that he has a legitimate expectation of privacy in the premises searched.*[6]

As noted by the trial court, the evidence of Wright's connection to the apartment was sparse. Although Wright was the sole occupant of the apartment in the early morning, the evidence from the suppression hearing does not address Wright's

---

[6] (Citations and punctuation omitted; emphasis supplied.) *Brown v. State*, 295 Ga. 695, 697-698 (2) (763 SE2d 710) (2014).

status relative to the apartment, i.e., whether he was the primary tenant, a co-tenant, an overnight visitor, merely present with the tenant's consent, or even an uninvited trespasser. The only evidence of anyone occupying this apartment prior to the police visit was testimony that this was the last known address of the suspect and that police had observed the unnamed suspect at the apartment during surveillance.[7] Faced with this thin record, and in the absence of any evidence tying Wright to the apartment other than his early-morning presence along with his identification, a firearm, and narcotics in an upstairs bedroom, the trial court explicitly found that "the record does not establish what, if any, relationship the Defendant had with the house in question at the time of the search."[8]

---

[7] When asked by the court if the apartment was expected to be the suspect's residence, a member of the entry team testified that: "[T]hat was the last known address that [we] had. And, Your Honor, just to clarify, . . . they spend a lot of time working these the investigations[,] and a lot of surveillance time is dedicated to these cases. So[] it wasn't just an address that they looked up[,] and they found. I believe it's an address that they physically observed the individual who was wanted at that location, and then along with everything else that was tied in and documented."

[8] The trial court arguably could have relied upon the fact that Wright was the sole occupant in the early morning to conclude that Wright was an overnight guest at the apartment. But it did not. Instead, the trial court explicitly found that Wright's relationship to the apartment "if any" was not established. We must accept this finding even as we independently apply the law to the facts. See *Mitchell*, 301 Ga. at 565.

6

Having made this finding, however, the trial court erred by concluding that Wright had met his burden to demonstrate that he had standing to contest the search (the same search to which he consented).[9] As noted above, it was Wright's burden to demonstrate a legitimate expectation of privacy in the apartment, for example, by demonstrating that he was an overnight guest at the apartment.[10] Once the trial court concluded that Wright had not demonstrated his status, the court erred by allowing him to challenge the search on Fourth Amendment grounds.[11] This case might be

---

[9] The trial court's order stated: "Absent evidence in the record, the Court looks to case law and the spirit of the Fourth Amendment against warrantless searches of residences — the Court holds that the Defendant has standing to claim protection of the Fourth Amendment." No citation of authority or further analysis accompanied this conclusion.

[10] See *Brown*, 295 Ga. at 697-698 (2), citing *State v. Carter*, 305 Ga. App. 814, 816-817 (701 SE2d 209) (2010) (holding that the trial court erred by granting a motion to suppress because the defendant failed to demonstrate standing: "There was no evidence regarding how long he and the other two defendants had been at the house, that the renter had authorized them to be there, or that they were overnight guests.").

[11] See *Carter*, 305 Ga. App. at 816-817. Compare *Moses v. State*, 328 Ga. App. 625, 627 (2) (a) (760 SE2d 217) (2014) (concluding that the defendant had standing to challenge a search of a residence in which he did not live because he owned the house, his family members lived at the house, he received mail there, and he "kept his personal property in the master bedroom, including his clothing, jewelry, identification, and personal papers" in the house); *Snider v. State*, 292 Ga. App. 180, 180-182 (663 SE2d 805) (2008) (holding that the defendant had standing to challenge the search of a hotel room registered to another person because "[t]he evidence

7

different if, as in several other cases cited by Wright, he was the owner/occupant of a residence objecting to a third-party's consent to search it. Our case law is clear that a person in that position has a reasonable expectation of privacy and may object to consent given by another person without authority.[12] But as noted by the trial court, the record does not establish Wright's relationship to the apartment, and as a factual matter, Wright is not objecting to someone else's consent. Therefore, the trial court erred by concluding that Wright had standing to challenge the search he consented to in this case.

2. The State's remaining enumerations are moot.

*Judgment reversed. Miller, P. J., and Reese, J., concur.*

---

showed that [the defendant] had stayed overnight at, and was still occupying, a hotel room.").

[12] See, e.g., *Hunt v. State*, 302 Ga. App. 578, 581-582 (691 SE2d 368) (2010) (finding that evidence found during a warrantless search of the defendant's home should have been excluded because the officers did not know who owned the home and made no effort to determine whether the temporary occupant who consented to a search had authority to do so); *Pledger v. State*, 257 Ga. App. 794, 798 (572 SE2d 348) (2002) (same).