**FOURTH DIVISION**
**RICKMAN, C. J.,**
**DILLARD, P. J., and PIPKIN, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**May 23, 2023**

# In the Court of Appeals of Georgia

A23A0552. THE AUGUSTA PRESS, INC. v. ROUNDTREE.

DILLARD, Presiding Judge.

The Augusta Press, Inc. appeals from the trial court's dismissal of its complaint against Richard Roundtree, the sheriff of Richmond County, Georgia, which alleged that Roundtree violated Georgia's Open Records Act. Specifically, Augusta Press argues the trial court erred in dismissing its action when (1) the requested body camera footage was not subject to any exemption under the Act, and (2) the sheriff's department was required by the Act to release incident-report information. For the following reasons, we affirm.

Viewed *de novo* in the light most favorable to Augusta Press,[1] the complaint shows the Augusta Press is an online newspaper that made an Open Records Act request to the Richmond County Sheriff's Department on May 20, 2022. The request sought "reports from a call made by the . . . Department to [an address] on May 3, 2022" and "body-cam video" from that call. But the sheriff's department refused to provide the information to the Augusta Press, asserting that the requested documents were exempt from release. As a result, the Augusta Press filed a complaint in superior court alleging Roundtree was in violation of the Open Records Act.

The Augusta Press attached to its complaint a copy of a Petition for Temporary Protective Order in a civil matter related to the individuals concerned in the May 3, 2022 incident—Whitney and Geoffrey Alls. And according to that petition, Whitney called 911 on May 3, 2022, after Geoffrey punched her in the head and tried to prevent her from calling for help. The Augusta Press sought production of the items it requested from the sheirff's department in relation to its resulting visit to the

---

[1] *See, e.g.*, *Campbell v. Cirrus Educ., Inc.*, 355 Ga. App. 637, 638 (845 SE2d 384) (2020) (noting that "this Court conducts a de novo review of a trial court's ruling on a motion to dismiss. In doing so, our role is to determine whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, and with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts; however we need not adopt a party's legal conclusions based on these facts.").

2

couple's home, requested the award of a civil penalty, and asked for payment of its attorney fees.

This action came before the trial court for a *rule nisi* hearing on August 8, 2022, and the court later dismissed it. In doing so, the trial court concluded the only report in existence regarding the May 3, 2022 incident was a family violence report, which was not subject to release under the Open Records Act. Additionally, the trial court concluded the requested body-camera footage was encompassed by the special violence report and was, therefore, likewise exempt from release under the Act. The Augusta Press now appeals from the dismissal of its action.

1. The Augusta Press maintains that the requested body-camera footage from law enforcement's visit to the Alls' residence was not subject to any exemption under the Open Records Act and so it should have been released. We disagree.

Georgia's Open Records Act provides that there is "strong public policy . . . in favor of open government," and thus "a strong presumption that public records should be made available for public inspection without delay."[2] Additionally, the Act

---

[2] OCGA § 50-18-70 (a); *see City of Atlanta v. Corey Ent., Inc.*, 278 Ga. 474, 476 (1) (604 SE2d 140) (2004) ("The purpose of Georgia's Open Records Act is to allow the public to evaluate the expenditure of public funds and to foster confidence in government through openness to the public." (punctuation omitted)); *accord Geer v. Phoebe Putney Health Sys., Inc.*, 310 Ga. 279, 281 (849 SE2d 660) (2020); *Smith*

requires that it be "broadly construed to allow the inspection of governmental records," and that exceptions to the Act "be interpreted narrowly to exclude only those portions of records addressed by such exception."[3]

Importantly, when we interpret statutory language, we necessarily begin our analysis with "familiar and binding canons of construction."[4] And in considering the meaning of a statute, our charge as an appellate court is to "presume that the General Assembly meant what it said and said what it meant."[5] Toward that end, we must afford the statutory text its plain and ordinary meaning,[6] consider the text

---

*v. Northside Hosp., Inc.*, 347 Ga. App. 700, 704 (820 SE2d 758) (2018).

[3] OCGA § 50-18-70 (a); *see City of Atlanta*, 278 Ga. at 476 (1) ("[T]he Georgia Open Records Act treats all public records as subject to disclosure, except those which by order of a court of this state or by law are prohibited or specifically exempted from being open to inspection." (punctuation omitted)).

[4] *Monumedia II, LLC v. Dep't of Transp.*, 343 Ga. App. 49, 51 (1) (806 SE2d 215) (2017) (punctuation omitted); *accord Holcomb v. Long*, 329 Ga. App. 515, 517 (1) (765 SE2d 687) (2014); *In the Interest of L. T.*, 325 Ga. App. 590, 591 (754 SE2d 380) (2014).

[5] *Monumedia II, LLC*, 343 Ga. App. at 51-52 (1) (punctuation omitted); *accord Deal v. Coleman*, 294 Ga. 170, 172 (1) (a) (751 SE2d 337) (2013); *Holcomb*, 329 Ga. App. at 517 (1); *Martinez v. State*, 325 Ga. App. 267, 273 (2) (750 SE2d 504) (2013).

[6] *Holcomb*, 329 Ga. App. at 517 (1); *accord Deal*, 294 Ga. at 172 (1) (a); *see Tibbles v. Teachers Retirement Sys. of Ga.*, 297 Ga. 557, 558 (1) (775 SE2d 527 (2015) ("A statute draws its meaning, of course, from its text." (punctuation & citation omitted)); *Chan v. Ellis*, 296 Ga. 838, 839 (1) (770 SE2d 851) (2015) (same;

contextually,[7] read the text "in its most natural and reasonable way, as an ordinary speaker of the English language would,"[8] and seek to "avoid a construction that makes some language mere surplusage."[9] Simply put, when the language of a statute

---

*State v. Able*, 321 Ga. App. 632, 636 (742 SE2d 149) (2013) ("A judge is charged with interpreting the law in accordance with the original and/or plain meaning of the text at issue (and all that the text fairly implies) . . . ."); *Singletary v. State*, 310 Ga. App. 570, 572 (713 SE2d 698) (2011) ("In construing these statutes, we apply the fundamental rules of statutory construction that require us to construe the statutes according to their terms, [and] to give words their plain and ordinary meaning . . . ." (punctuation omitted)).

[7] *Monumedia II, LLC*, 343 Ga. App. at 52 (1); *see Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 10 (II) (B) (133 SCt 2247, 186 LE2d 239) (2013) (Scalia, J.) ("Words that can have more than one meaning are given content, however, by their surroundings." (punctuation omitted)); *Deal*, 294 Ga. at 172 (1) (a) ("[W]e must view the statutory text in the context in which it appears[.]"); *Hendry v. Hendry*, 292 Ga. 1, 3 (1) (734 SE2d 46) (2012) (same); *In the Interest of L. T.*, 325 Ga. App. 590, 592 (754 SE2d 380) (2014) (same); *Martinez*, 325 Ga. App. at 273 (2) (same); *see also* OCGA § 1-3-1 (b) ("In all interpretations of statutes, the ordinary signification shall be applied to all words ...."); *Tibbles*, 297 Ga. at 558 (1) ("The common and customary usages of the words are important, but so is their context." (punctuation & citation omitted)); *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1077 (II) (C) (2) (7th Cir. 2013) (Manion, J.) ("In statutory construction cases, we begin with the language of the statute itself and the specific context in which that language is used." (citation and punctuation omitted)).

[8] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Deal*, 294 Ga. at 172-73 (1) (a); *Holcomb*, 329 Ga. App. at 518 (1).

[9] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord In the Interest of L.T.*, 325 Ga. App. at 592; *Holcomb*, 329 Ga. App. at 518 (1).

is "plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly."[10]

Looking to the statutory exemptions under the Open Records Act, subject to certain exceptions inapplicable to this case,[11] "[a]udio and video recordings from devices used by law enforcement officers in a place where there is a reasonable expectation of privacy when there is no *pending* investigation" are not subject to

---

[10] *Monumedia II, LLC*, 343 Ga. App. at 52 (1) (punctuation omitted); *accord Holcomb*, 329 Ga. App. at 518 (1); *Luangkhot v. State*, 292 Ga. 423, 424 (1) (736 SE2d 397 (2013), *superseded by statute on other grounds as recognized by Estrada-Nava v. State*, 332 Ga. App. 133 (771 SE2d 28) (2015); *see Deal*, 294 Ga. at 173 (1) (a) ("[I]f the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end." (punctuation omitted)).

[11] Those exceptions require the person seeking the video or audio recording to submit a sworn affidavit attesting to facts necessary to establish that they are "[a] duly appointed representative of a deceased's estate when the decedent was depicted or heard on such recording; . . . [a] parent or legal guardian of a minor depicted or heard on such recording; . . . [a]n accused in a criminal case when, in the good faith belief of the accused, such recording is relevant to his or her criminal proceeding; . . . [a] party to a civil action when, in the good faith belief of such party, such recording is relevant to the civil action; . . . [a]n attorney for any of the persons identified in subparagraphs (A) through (D) of this paragraph; or . . . [a]n attorney for a person who may pursue a civil action when, in the good faith belief of such attorney, such recording is relevant to the potential civil action[.]" OCGA § 50-18-72 (a) (26.2) (A)-(F).

release under the Act.[12] Even so, the Augusta Press contends that because Whitney called law enforcement for assistance on the date in question, there was no reasonable expectation of privacy in the Alls' home at that time; and as a result, the body-camera footage of responding officers is subject to release under the Act.

Under the plain language of the exemption, the body-camera footage is *not* subject to release. It is undisputed that the footage—which is not contained in the record on appeal—was filmed at the Alls' home. And although the Augusta Press contends that an expectation of privacy erodes in a home when law enforcement is called to respond to an incident, the exemption explicitly refutes this assertion. Indeed, under the exemption, video or audio by law enforcement is *not* subject to release when made "in a place where there is a reasonable expectation of privacy *when there is no pending investigation*."[13] In other words, the audio or video is not subject to release if, *but for* law enforcement's presence for a pending investigation, it is made in a place where there is a reasonable expectation of privacy.

Suffice it to say, there is undoubtedly a reasonable expectation of privacy in one's home, as repeatedly and emphatically established in both federal and state

---

[12] OCGA § 50-18-72 (a) (26.2) (emphasis supplied).

[13] (Emphasis supplied).

Fourth Amendment jurisprudence.[14] And so, the Alls undoubtedly had a reasonable

expectation of privacy at their home *in the absence of a pending law enforcement*

---

[14] *See Florida v. Jardines*, 569 U.S. 1, 6 (II) (a) (133 SCt 1409, 185 LE2d 495) (2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'"); *Brown v. State*, 295 Ga. 695, 697 (2) (763 SE2d 710) (2014) ("A person has a legitimate expectation of privacy in his or her home . . . ."); *Weintraub v. State*, 352 Ga. App. 880, 887 (1) (836 SE2d 162) (2019) ("We have recognized that one's home is one's castle and the storm and wind may enter, but the King cannot enter, and all the forces of the Crown cannot cross the threshold of his ruined tenement." (punctuation omitted)). *Cf. Brown v. State*, 293 Ga. 787, 792 (2) (a) (750 SE2d 148) (2013) ("[O]ne's expectation of privacy in an automobile and of freedom in its operation are significantly different from the traditional expectation of privacy and freedom in one's residence." (punctuation omitted)); *Sevilla-Carcamo v. State*, 335 Ga. App. 788, 794 (3) (783 SE2d 150) (2016) ("[T]he expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. Indeed, automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. And the expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel." (footnotes & punctuation omitted)). *See generally* Orin S. Kerr, *Katz As Originalism*, 71 DUKE L.J. 1047, 1068 (II) (A) (2022) ("The third major inspiration for the Fourth Amendment, the *Writs of Assistance* case, is notable for its nearly singular focus on physical entry into the home. The case was argued by James Otis in 1761 to try to stop the practice of general warrants in the colonies. Although the court rejected the argument and held the writs of assistance lawful, Otis's arguments against the legality of the writs were influential and understood to have helped inspire the adoption of search and seizure protections in state constitutions and later the federal Constitution." (footnotes omitted)).

*investigation*—no matter who called for the police.[15] The resulting body-camera footage *from that investigation*, then, is exempt from release under the plain language of OCGA § 50-18-72 (a) (26.2). The trial court properly concluded, then, that the Augusta Press was not entitled to review the footage.

To be sure, the trial court concluded the body-camera footage was not subject to release because it was encompassed by a family violence report that is exempted from release in this case.[16] But we may affirm the trial court's conclusion that the body-camera footage is exempt from release if its conclusion is right for any reason, which we have done.[17]

2. Next, the Augusta Press claims the trial court erred in concluding that Roundtree may exempt the narrative portion of an incident report from release. But

---

[15] *Cf. United States v. Davis*, 326 F3d 361, 365 (2d Cir. 2003) ("[A] defendant does not have a privacy interest in matters voluntarily revealed to a government agent, including a confidential informant.").

[16] *See* OCGA § 17-4-20.1 (d) ("The [family violence] report provided for . . . shall be considered as being made for statistical purposes only and where no arrests are made shall not be subject to the provisions of Article 4 of Chapter 18 of Title 50.").

[17] *See, e.g.*, *Williams v. State*, 307 Ga. 778, 784 (2) (838 SE2d 235) (2020) ("[W]e will affirm the judgment of a lower court so long as it is right for any reason, even if it is based upon erroneous reasoning." (punctuation omitted)).

the trial court did not err in concluding that the Augusta Press cannot obtain a narrative from the incident report because such a report does not exist in this case.

The Open Records Act provides that initial incident reports prepared during law-enforcement investigations are subject to release,[18] but "[n]o public officer or agency shall be required to prepare new reports, summaries, or compilations not in existence at the time of the request."[19] And here, the sheriff's department did not create an initial incident report and only prepared the aforementioned family violence report, which is exempt from release.[20] Nevertheless, the Augusta Press argues the narrative account of the May 3, 2022 incident contained *within* the family violence report is subject to release while the remainder of the report may be redacted. This argument is a nonstarter.

---

[18] *See* OCGA § 50-18-72 (a) (4) ("Public disclosure shall not be required for records that are . . . [r]ecords of law enforcement, prosecution, or regulatory agencies in any pending investigation or prosecution of criminal or unlawful activity, *other than initial police arrest reports and initial incident reports* . . . ." (emphasis supplied)).

[19] OCGA § 50-18-71 (j).

[20] *See supra* note 16 & accompanying text.

In making its argument, the Augusta Press relies upon *Blau v. Georgia Department of Corrections*,[21] in which we concluded that while certain identifying information needed to be redacted from the requested document concerning lethal injection drugs under OCGA 42-5-36 (d),[22] the remainder of the document was subject to release under the Open Records Act.[23] But under Georgia law, family violence reports "where no arrests are made *shall not be subject to the provisions* of

---

[21] 364 Ga. App. 1 (873 SE2d 464) (2022).

[22] That Code section provides that

[t]he identifying information of any person or entity who participates in or administers the execution of a death sentence and the identifying information of any person or entity that manufactures, supplies, compounds, or prescribes the drugs, medical supplies, or medical equipment utilized in the execution of a death sentence shall be confidential and shall not be subject to disclosure under Article 4 of Chapter 18 of Title 50 or under judicial process. Such information shall be classified as a confidential state secret.

OCGA § 42-5-36 (d) (2); *see also* OCGA § 42-5-36 (d) (1) ("As used in this subsection, the term 'identifying information' means any records or information that reveals a name, residential or business address, residential or business telephone number, day and month of birth, social security number, or professional qualifications.").

[23] *Blau*, 364 Ga. App. at 7-9 (1).

11

Article 4 of Chapter 18 of Title 50."[24] So, while *Blau* dealt with a statute that exempted only particular categories of information from release, we are faced with a statute that exempts an entire *document* from release when no arrest is made. And although exemptions from disclosure under the Open Records Act are narrowly construed, the Act "obviously should not be construed in derogation of its express terms."[25]

Here, it is undisputed that no arrests were made with regard to the May 3, 2022 call to law enforcement. As a result, no portion of the family violence report at issue—the narrative of which is almost certainly comprised of information that *must*

---

[24] OCGA § 17-4-20.1 (d) (emphasis supplied).

[25] *Evans v. Ga. Bureau of Investigation*, 297 Ga. 318, 319 (773 SE2d 725) (2015) (punctuation omitted), *disapproved of on other grounds by Blalock v. Cartwright*, 300 Ga. 884 (799 SE2d 225) (2017); *accord Unified Gov't v. Athens Newspapers, LLC*, 284 Ga. 192, 195 (1) (663 SE2d 248) (2008).

be included in such a report[26]—is subject to release in this case. Accordingly, the trial court did not err in its conclusion.[27]

For all these reasons, we affirm the trial court's dismissal order.

*Judgment affirmed. Rickman, C. J., and Pipkin J., concur.*

---

[26] *See* OCGA § 17-4-20.1 (c) (1)-(13) (providing that family violence reports "shall include" the following information: name of the parties; relationship of the parties; sex of the parties; date of birth of the parties; time, place, and date of the incident; whether children were involved or whether the act of family violence was committed in the presence of children; type and extent of the alleged abuse; existence of substance abuse; number and types of weapons involved; existence of any prior court orders; type of police action taken in disposition of case, the reasons for the officer's determination that one party was the predominant physical aggressor, and mitigating circumstances for why an arrest was not made; whether the victim was apprised of available remedies and services; and any other information that may be pertinent).

[27] *See Evans*, 297 Ga. at 320 ("Although [appellant] contends that the records that prompted his arrest can be separated from those of the other two individuals alleged to be involved in racketeering, and that any evidence about them can be redacted from the records supplied to him, such was not the evidence presented in the trial court, and the focus of [OCGA § 50-18-72] (a) (4) is not upon the specific type of information contained in law enforcement and prosecution records. That subsection broadly exempts from disclosure the entirety of such records to the extent they are part of a 'pending investigation or prosecution' and cannot otherwise be characterized as the initial arrest or incident report." (punctuation omitted)), *disapproved of on other grounds by Blalock*, 300 Ga. 884.